In the Matter of the DEATH OF Fred D. PETERKIN (Deceased).

Gloria PETERKIN, Petitioner,

v.

CURTIS, INC. (Employer); Great West Casualty Co. (Insurer); Director of Division of Labor and Employment; and the Industrial Commission of the State of Colorado, Respondents.

No. 85SC55.

Supreme Court of Colorado, En Banc.

Dec. 15, 1986.

---

Jack Kintzele, Denver, for petitioner.

DeMoulin, Anderson, Campbell & Laugesen, P.C., Robert L. McGahey, Jr., Denver, for respondents Curtis, Inc. and Great West Cas. Co.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Timothy R. Arnold, First Asst. Atty. Gen., Robert C. Lehnert, Asst. Atty. Gen., Denver, for Director of Div. of Labor and Employment and Indus. Com'n of State of Colorado.

Gerald P. McDermott, Denver, for amicus curiae Colorado Trial Lawyers Assn.

ERICKSON, Justice.

We granted certiorari to review the court of appeals decision in *In re Death of Peterkin,* 698 P.2d 1353 (Colo.App.1985), which affirmed an Industrial Commission order suspending workmen's compensation benefits for Gloria Peterkin. We affirm.

### I.

On December 5, 1980, Fred Peterkin was fatally injured in a traffic accident in Junction City, Kansas. At the time of the accident, the decedent was acting within the course and scope of his employment with his Colorado employer, Curtis, Inc. On February 23, 1981, Gloria Peterkin, the decedent's widow, filed a claim on behalf of herself and her child for workmen's compensation death benefits. The employer's insurer, Great West Casualty Company (Great West), admitted liability, and by an order dated December 7, 1981, the Colorado Department of Labor and Employment awarded death benefits to Peterkin and her child in the amount of $244.65 per week. Peterkin's benefits were payable up to a maximum of $100,000.

Sometime in 1981, Peterkin also commenced a wrongful death action in the federal district court for Kansas against third-party tortfeasors allegedly responsible for Fred Peterkin's death. The case was tried to a jury in June 1982, and on July 2, 1982, the court entered judgment on a $500,000 verdict in favor of Peterkin and her child. On the same date, the court approved a $100,000 settlement between Peterkin and the third party tortfeasors, compromising the $500,000 judgment. With respect to Great West's subrogation interest in the settlement proceeds, the Kansas court ordered:

[T]he employer or its insurance carrier will have a lien for amounts it has paid or will pay in the future as and for workers' compensation benefits arising out of the wrongful death of Fred Peterkin, deceased. The Court further finds that plaintiffs' attorneys are entitled to a reasonable fee for any amounts reim-

bursed to the employer or its insurance carrier.

Although Peterkin notified the Kansas court of Great West's interest in her third-party recovery, the record contains no evidence that Peterkin either notified Great West of the pending suit, informed it of the outcome, or procured its consent to the $100,000 settlement.

On August 3, 1982, the court ordered that the settlement be distributed as follows: $33,361.18 to Peterkin individually; $22,240.78 to Peterkin as conservator for the estate of her child; $27,800 to Peterkin's Kansas counsel; $12,768.04 to Great West for workmen's compensation benefits already paid to Peterkin; and $100 to an attorney who acted as guardian ad litem for Peterkin's child.[1]

On November 19, 1982, after Great West discovered that Peterkin had compromised and settled her third party claim for $100,000, a motion was filed with the Colorado Department of Labor and Employment to suspend Peterkin's death benefits. Great West alleged that Peterkin's $100,000 settlement offset her $100,000 workmen's compensation award, and that Great West was relieved of paying all future benefits. In response, Peterkin filed a "Motion for Reasonable Attorney's Fees," claiming that her benefits should be reduced only by the amount of the settlement that remained after she paid her attorney's fees and costs. The hearing officer granted Great West's motion to suspend, and concluded that Peterkin's gross recovery of $100,000 entirely offset Great West's liability for future payments. The hearing officer stated:

> [T]he interpretation placed on the Workmen's Compensation Act confers a benefit upon the employer and insurer in this case, and does not require those parties to pay even a proportionate share of the attorney's fees for this benefit conferred. The Referee is ... aware and may per-

sonally disagree with the conclusion which requires that the respondents here be credited with the gross settlement amount from the third party action when, in fact, the amount that the dependents here received was reduced by $27,800 in attorney's fees, $100 in guardian ad litem fees, and $3,730 in expense reimbursement. Still, the Referee cannot award attorney's fees in ... the manner suggested by the dependents or in a credit by way of offset against the gross settlement amount. There is simply no statutory authority or case authority in Colorado for such a procedure, although there is such authority in other jurisdictions. Moreover, in Colorado, the courts while construing the workmen's compensation statute liberally and for the benefit of the employee, have consistently, also, required that the workmen's compensation statute not be read to include non-existent provisions. It is this Referee's opinion that to award attorney's fees to the claimant without statutory [or] case authority would be an abuse of the Referee's discretion.

The Industrial Commission affirmed the order of the hearing officer, and Peterkin appealed. The court of appeals affirmed.

We have not previously determined whether a workmen's compensation insurance carrier may offset an employee's future benefits by the full amount of a third-party settlement. We do not address that issue here because the suspension of Peterkin's benefits was proper on other grounds.

II.

Section 8–52–108(1), 3B C.R.S. (1986), provides:

> If any employee entitled to compensation under articles 40 to 54 of this title is injured or killed by the negligence or wrong of another not in the same employ, such injured employee or, in case of

---

1. By a subsequent clarifying order dated February 18, 1983, the court ruled that "Great West Casualty Company is ordered to pay one-third of the amount of $12,768.04 to plaintiff's counsel as a reasonable attorney's fee in this case."

Great West appealed the orders of June 2, 1982 and February 18, 1983, but its appeal was dismissed because it was not a party to Peterkin's action.

death, his dependents, before filing any claim under this article, shall elect in writing whether to take compensation under said articles or to pursue his remedy against the other person.... If such injured employee or, in case of death, his dependents elect to take compensation under said articles, the payment of compensation shall operate as and be an assignment of the cause of action against such other person to the ... insurance carrier liable for the payment of such compensation. Said insurance carrier shall not be entitled to recover any sum in excess of the amount of compensation for which said carrier is liable under said articles to the injured employee, but to that extent said carrier shall be subrogated to the rights of the injured employee against said third party causing the injury. *If the injured employee elects to proceed against such other person, the state compensation insurance fund, medical disaster insurance fund, major medical insurance fund, subsequent injury fund, person, association, corporation, or insurance carrier, as the case may be, shall contribute only the deficiency, if any, between the amount of the recovery against such other person actually collected and the compensation provided by said articles in such case....*

(Emphasis added.)

■ An employee who suffers a compensable injury at the hands of a third party may pursue his remedies against the third person even though the employee has filed a claim under the workmen's compensation act. *Chartier v. Winslow Crane Service Co.,* 142 Colo. 294, 350 P.2d 1044 (1960); *Drake v. Hodges,* 114 Colo. 10, 161 P.2d 338 (1945); *Kirkham v. Hickerson Brothers Truck Co.,* 29 Colo.App. 303, 485 P.2d 513 (1971). If the third-party suit is successful, the employer's insurance carrier may suspend all future benefits to the employee if the amount of the third-party recovery that is "actually collected" equals or exceeds the compensation award. Section 8–52–108(1), 3B C.R.S. (1986).

Peterkin asserts that the hearing officer should have deducted her attorney fees from the third-party recovery before applying the proceeds to her workmen's compensation award. Great West contends that the hearing officer was required by section 8–52–108(1) to offset the full amount of Peterkin's settlement against her workmen's compensation award. The apportionment of litigation costs and the allocation of a third-party recovery between the employee and the employer's insurance carrier is a troublesome issue that has spawned considerable litigation and a number of different legislative enactments. In most states, the workmen's compensation act sets forth a complex scheme to govern the distribution of litigation costs among those who share in the recovery. *See* 2A A. Larson, *Larson's Workmen's Compensation Law* § 74.32(a)(1)–(2). (1982). Other states, including Colorado, have statutes that do not contain provisions relating to the apportionment of attorney fees. *Id.* at § 74.32(a)(3).

In those states that have enacted statutes which are silent as to attorney fees and costs, the authorities are evenly divided on whether an employer's insurance carrier may be forced to bear a proportionate share of litigation costs incurred in the prosecution of a third-party suit. *Compare Hall v. Young's Dairy Products Co.,* 98 Idaho 562, 569 P.2d 907 (1977) (equitable principles require that an employer's insurance carrier bear a proportionate share of the employee's litigation expenses); *Charles Seligman Distributing Co. v. Brown,* 360 S.W.2d 509 (Ky.1962) (same); *Broussard, Broussard & Moresi, Ltd. v. State Auto & Casualty Underwriters Co.,* 287 So.2d 544 (La.App.1974) (same); *Tuttle v. Morrison-Knudsen Co.,* 177 Mont. 166, 580 P.2d 1379 (1978) (same); *Transport Indemnity Co. v. Garcia,* 89 N.M. 342, 552 P.2d 473 (N.M.App.), *cert. denied,* 90 N.M. 9, 558 P.2d 621 (1976) (same), *with Johnson v. Lee,* 460 F.2d 1053 (5th Cir.1972) (absent statutory authorization, a court may not shift the burden of the employee's litigation expenses to the employer's insurance carrier); *Tucker v. Nason,* 249 Iowa 496, 87

N.W.2d 547 (1958) (same); *Meehan's Case,* 316 Mass. 522, 56 N.E.2d 23 (1944) (same); *Becker v. Huss Co.,* 43 N.Y.2d 527, 373 N.E.2d 1205, 402 N.Y.S.2d 980 (1978) (same, applying New York law prior to a statutory change); *Dover v. Casualty Reciprocal Exchange,* 410 S.W.2d 306 (Tex. Civ.App.1966) (same); *Lowry v. Department of Labor and Industries,* 21 Wash. 2d 538, 151 P.2d 822 (1944) (same).

■ In our view, we need not determine whether an employee has the right to apportion attorney's fees and costs incurred in the prosecution of a third party suit. Peterkin failed to procure Great West's consent to a settlement of her third-party claim, and on that ground alone the suspension of her benefits was proper. Section 8–52–108(2), 3B C.R.S. (1986), provides: .

> [The employee's third party] action assigned to the division of the state compensation insurance fund may be prosecuted or compromised by it. *A compromise of any such cause of action by the employee or his dependents at an amount less than the compensation provided for by articles 40 to 54 of this title shall be made only with the written approval of the manager of the state compensation insurance fund, if the deficiency of compensation would be payable from the state compensation insurance fund, and otherwise with the written approval of the person, association, corporation, or insurance carrier liable to pay the same.*

(Emphasis added.)

If an employee fails to procure the insurer's consent in accordance with section 8–52–108(2), the employee forfeits his or her right to receive future benefits.[2] *Hornback v. Industrial Commission,* 106 Ariz. 216, 474 P.2d 807 (1970); *Spielbeuhler v. Henry Spielbeuhler Construction Corp.,* 28 A.D.2d 1047, 284 N.Y.S.2d 13 (1967); *Rushford v. Perini Corp.,* 24 A.D.2d 775, 263 N.Y.S.2d 722 (1965); *Safety Kleen Corp. v. Van Hoy,* 225 Va. 64, 300 S.E.2d 750 (1983). The rule of forfeiture is supported by sound policy considerations:

> Just as the employee needs to be protected from dispositions of third-party rights by compensation carriers motivated solely by carrier self interest, so the carrier sometimes needs to be protected from improvident dispositions of third party rights by employees.
>
> . . . .
>
> The commonest expression of this concern is the familiar rule, sometimes explicitly laid down in statute, that if an employee settles a third party claim without the employer's consent, the employee forfeits any right to future compensation.

2A A. Larson, *Larson's Workmen's Compensation Law* § 74.17 at 14–372 to –373 (1982) (footnotes omitted).

Because Great West did not consent or agree to Peterkin's settlement of the judgment, Great West was entitled to suspend Peterkin's benefits regardless of our resolution of the issue of apportionment. If we accept Great West's contention that an insurance carrier may offset a claimant's gross recovery against his or her compensation award, the hearing officer's suspension of Peterkin's future benefits was correct because her gross recovery equaled her compensation award. If, on the other hand, we conclude that Great West must bear the burden of Peterkin's litigation expenses, Peterkin violated section 8–52–

---

2. Some courts avoid the harsh rule of forfeiture if the insurer participated in or encouraged the employee's settlement. *See, e.g., Robinson Terminal Warehouse Corp. v. Adler,* 440 F.2d 1060 (4th Cir.1971); *Coker-Mitchell Co. v. State Industrial Court,* 450 P.2d 894 (Okla.1969). *See also Moore v. Metropolitan Suburban Bus Authority,* 91 A.D.2d 768, 458 N.Y.S.2d 271 (1982) (the insurer's repeated statements to the employee that its consent was not required estopped it from suspending the employee's benefits). Other protections may be required where the insurer unreasonably refuses to consent to the employee's settlement. *See* 2A A. Larson, *Larson's Workmen's Compensation Law* § 74.17(d) (1983). *Cf. Potomac Insurance Co. v. Wilkins Co.,* 376 F.2d 425 (10th Cir.1967) (an insurer has a duty to exercise diligence, intelligence, good faith, and fidelity to the insured in determining whether to accept or reject an offer of settlement by one having a claim against the insured).

108(2) by compromising her third-party claim for less than the amount necessary to discharge the employer's insurer.[3] In either case, the hearing officer properly granted Great West's motion to suspend Peterkin's future benefits, and the judgment of the Industrial Commission must be affirmed.

Accordingly, the decision of the court of appeals is affirmed.

---

**3.** Because section 8–52–108(2) is designed to protect the insurer against any prejudice arising from the employee's improvident settlement of a third-party claim, we hold that section 8–52–108(2) is violated only if the employee settles a claim for an amount less than that necessary to discharge the insurer. In the present case, Peterkin violated section 8–52–108(2) only if we accept her claim that Great West is still liable for deficiency payments.