Thomas L. **PETERSON,** Plaintiff,

and

**CNA Insurance Companies,**
**Plaintiff–Appellant,**

v.

Steven L. **KESTER,**
**Defendant–Appellee.**

No. 88CA0937.

Colorado Court of Appeals,
Div. V.

Dec. 14, 1989.

Rehearing Denied Jan. 25, 1990.

Certiorari Denied May 14, 1990.

Stuart G. Barr, P.C., Stuart G. Barr, Denver, for plaintiff-appellant.

Zimmerman & Schwartz, P.C., J. Gregory Morrell, Denver, for defendant-appellee.

Opinion by Judge DUBOFSKY.

The issue in this case is whether a workmen's compensation carrier seeking to enforce its statutory right of subrogation is subject to the bar against tort recovery for direct benefits contained in the Colorado Auto Accident Reparations Act, § 10–4–701, et seq., C.R.S. (1987 Repl. Vol. 4A) (the No–Fault Act). The district court entered summary judgment against the carrier, CNA Insurance Companies (CNA), finding that the No–Fault Act bars the carrier's subrogation claim. We affirm.

The relevant facts are undisputed. Thomas L. Peterson was injured in an automobile accident during the course and scope of his employment. CNA, the workmen's compensation carrier for Peterson's employer, paid Peterson workmen's compensation benefits totaling $13,955.38.

Thereafter, Peterson, joined by CNA as subrogee, commenced this personal injury action against the third-party tortfeasor, Steven L. Kester (Kester). Peterson died during the pendency of the action of causes unrelated to the automobile accident, and

his claims were dismissed. Kester thereupon filed a motion for summary judgment, asserting that CNA's claim was barred under § 10–4–713(1), C.R.S. (1987 Repl. Vol. 4A) of the No–Fault Act. The district court agreed, and entered judgment dismissing CNA's claim.

On appeal, CNA argues that the district court erred in determining that the No–Fault Act modified, or implicitly repealed, the statutory right of reimbursement and subrogation set forth in § 8–52–108(1), C.R.S. (1986 Repl. Vol. 3B), of the Workmen's Compensation Act. We conclude that, under the facts presented here, the district court was correct.

When an employee is injured in a work-related automobile accident, his entitlement to compensation is governed by both the No–Fault Act and the Workmen's Compensation Act.

Section 10–4–707(5), C.R.S. (1987 Repl. Vol. 4A) of the No–Fault Act coordinates benefits and establishes the workmen's compensation coverage as primary:

> "When a person injured is a person for whom benefits are required to be paid under the 'Workman's Compensation Act of Colorado', the coverages described in § 10–4–706(1)(b) to (1)(e) [personal injury protection (PIP)] coverage shall be reduced to the extent that [workmen's compensation] benefits are actually available and covered under said act within the time period for payment of benefits under this part 7 prescribed by section 10–4–708."

*See generally* 2A A. Larson, *Workmen's Compensation Law* § 71.24(a) & (f) (1988) which indicates Colorado's § 10–4–707(5) statutory scheme is consistent with other jurisdictions in this regard.

■ Under § 8–52–108(1), an injured employee may seek to enforce the legal liability of a third-party tortfeasor, and in such cases, the workmen's compensation carrier is subrogated to the rights and remedies of the injured employee or his beneficiaries. *See Kennedy v. Industrial Commission,* 735 P.2d 891 (Colo.App.1986). However, in work-related automobile accidents, the tort-

feasor's legal liability is limited by operation of the No–Fault Act.

■ Under the No–Fault Act's partial abolition of tort remedies, recovery in tort is limited to losses which fall outside "direct" PIP coverage, that is, non-economic loss and economic loss exceeding PIP benefits. *See* § 10–4–714(1), C.R.S. (1987 Repl. Vol. 4A). Thus, under § 10–4–714(1), an employee injured in a work-related automobile accident cannot maintain a tort action unless the threshold requirements for damages are established, and when a tort action can be maintained, tort recovery must exclude losses required to be paid under PIP coverage. *See* § 10–4–713(1), C.R.S. (1987 Repl. Vol. 4A); *Cingoranelli v. St. Paul Fire & Marine Insurance Co.,* 658 P.2d 863 (Colo.1983); *Ramirez v. Veeley,* 757 P.2d 160 (Colo.App.1988).

The record in this case reflects that CNA paid Peterson $4,927.38 in medical expenses and $9,028 in temporary disability (lost income) benefits, and that all payments were made within one year of the accident. Therefore, the amounts paid by CNA do not exceed, either in amount or duration, the direct no-fault coverage to which Peterson would have been entitled had this not been a scope-of-employment accident. *See* § 10–4–706(1)(b) to (1)(e), C.R.S. (1987 Repl. Vol. 4A).

■ An insurer's right of subrogation is derived from the rights of its insured, and is limited to those rights. *See Marquez v. Prudential Property & Casualty Insurance Co.,* 620 P.2d 29 (1980). The undisputed facts here reflect that Peterson, if he were still alive and a party to this litigation, would be precluded under § 10–4–713(1) and § 10–4–714 from recovering from the tortfeasor those direct PIP benefits that he had received, or was entitled to receive, from CNA. *Cingoranelli v. St. Paul Fire & Marine Insurance Co., supra.* Therefore, CNA, as Peterson's insurer, has no derivative right of subrogation against Kester.

■ Furthermore, CNA does not have an independent right of indemnity under the No–Fault Act. As originally enacted, the

No–Fault Act granted an insurer a direct cause of action against third-party tortfeasors for the recovery of PIP benefits exceeding $500. Additionally, it granted the insurer a right of indemnity, enforceable by arbitration proceedings, for reimbursement from the tortfeasor's insurance carrier. *See* Colo. Sess. Laws 1973, ch. 94, § 1 at 334. Subsequently, however, in order to reduce further the amount of tort litigation arising out of automobile accidents, the General Assembly abolished the insurer's direct right of recovery except in limited circumstances not pertinent here. *See* Colo.Sess.Laws 1979, ch. 75 at 388; Colo.Sess.Laws 1984, ch. 303 at 1072; *Baumgart v. Kentucky Farm Bureau Mutual Insurance Co.,* 199 Colo. 330, 607 P.2d 1002 (1980).

Further, as reflected in the legislative history of the Act, the General Assembly concluded that administrative costs and insurance premiums could be lowered by requiring insurance carriers to absorb their own PIP losses in most instances. Therefore, in 1980 the General Assembly restricted the scope of the mandatory inter-company arbitration provision, § 10–14–717, C.R.S. (1987 Repl. Vol. 4A), to accidents involving "nonprivate passenger" motor vehicles. Colo.Sess.Laws 1980, ch. 62 at 466; *see also* Tape Recording of testimony before the Senate Committee on Senate Bill 107 (February 12, 1980). We note further that the arbitration statute is limited by its terms to insurers "licensed to write motor vehicle insurance" and the statute thus has no application to workmen's compensation carriers.

Since CNA has neither a direct nor a derivative right of recovery under the No–Fault Act, the question is whether the No–Fault Act abrogates or repeals by implication the statutory right of subrogation granted under § 8–52–108 of the Workmen's Compensation Act. When an apparent conflict exists between two statutes, and the two provisions cannot be harmonized, the statute enacted last in time controls. *Ortega v. Industrial Commission,* 682 P.2d 511 (Colo.App.1984).

The purpose of the subrogation provision in § 8–52–108 is to prevent an injured employee from receiving a double recovery. *See Continental Casualty Co. v. Gate City Steel,* 650 P.2d 1336 (Colo.App.1982). However, this rationale is abrogated under § 10–4–707(5) to the extent that the workmen's compensation carrier serves as the primary insurer in scope-of-employment automobile accidents. In such cases, the carrier is primarily liable for the injured employee's direct workmen's compensation loss benefits. Therefore, the carrier's statutory right of subrogation is necessarily limited to instances in which the workmen's compensation benefits exceed the direct benefits in either amount or duration.

We base our interpretation not only on the allocation of liability set forth in § 10–4–707(5), but also upon the partial abolition of tort liability mandated under § 10–4–713(1) and § 10–4–714. Because these provisions preclude the injured employee from suing in tort to recover losses covered by minimum PIP coverage, the workmen's compensation carrier, as would-be subrogee, is likewise precluded from seeking reimbursement for such amounts.

We note that our resolution of this question is consistent with that of courts in other no-fault jurisdictions that have addressed the issue. *See Great American Insurance Co. v. Queen,* 410 Mich. 73, 300 N.W.2d 895 (Mich.1980); *Metropolitan Transit Commission v. Bachman's,* 311 N.W.2d 852 (Minn.1981); *Vinson v. Berkowitz,* 83 A.D.2d 531, 441 N.Y.S.2d 460 (N.Y.App.Div.1981); *Vespazini v. Insana,* 462 A.2d 669 (Pa.1983).

We further note that, under our analysis, the workmen's compensation carrier itself would be immune from suit for the recovery of PIP benefits under §§ 10–4–713(1) and 10–4–714 in instances in which the carrier is the primary insurer under § 10–4–707(5) and the worker is the tortfeasor responsible for the automobile accident.

■ Accordingly, we hold that § 10–4–713(1) of the No–Fault Act, enacted later in time than § 8–52–108, abrogated the subrogation rights under § 8–52–108 to

the extent that the workmen's compensation carrier is primarily liable for the injured employee's direct loss benefits, and to the extent that workmen's compensation benefits do not exceed in amount or duration the minimum required coverages set forth in § 10–4–706(1)(b) and (1)(e), C.R.S. (1987 Repl. Vol. 4A).

The judgment is affirmed.

JONES and RULAND, JJ., concur.