Charles TATE, Petitioner,

v.

The INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE OF COLORADO; Anschutz Corporation; and National Union Fire Insurance Company, Respondents.

No. 90SC195.

Supreme Court of Colorado,
En Banc.

July 9, 1991.

William A. Alexander, Jr., Colorado Springs, for petitioner.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Michael P. Serruto, Asst. Atty. Gen., Denver, for respondent The Industrial Claim Appeals Office.

Greengard, Senter, Goldfarb & Rice, Karen Treece Peterson, Floyd M. Youngblood, Denver, for respondents Anschutz Corp. and Nat. Union Fire Ins. Co.

Wilcox, Ogden & Cox, P.C., Ralph Ogden, Denver, for amicus curiae Colorado Trial Lawyers Ass'n.

Robert Klingler, Thomas Kanan, Denver, for amicus curiae Colorado Compensation Ins. Authority.

Justice LOHR delivered the Opinion of the Court.

This case presents a question concerning the relationship between the Workmen's Compensation Act of Colorado, §§ 8–40–101 to 8–54–127, 3B C.R.S. (1986), and the Colorado Auto Accident Reparations Act, §§ 10–4–701 to –723, 4A C.R.S. (1987 & 1990 Supp.), which establishes a no-fault automobile insurance system. The issue is whether a workers' compensation insurance carrier is entitled to a credit against its obligations for workers' compensation benefits due an employee injured in an auto accident within the course and scope of his employment for the proceeds of a settlement of the employee's personal injury action against a third party tortfeasor when the benefits at issue would have been paid by the employer's no-fault auto insurance carrier but for the work-related nature of the accident. In *Tate v. Industrial Claim Appeals Office*, No. 89CA0890 (March 2, 1990) (unpublished opinion), the Colorado Court of Appeals held that the workers' compensation insurer was entitled to such a credit. We disagree and therefore reverse the judgment of the court of appeals.

## I.

On December 7, 1983, the petitioner, Charles Tate (Claimant), was injured in an automobile accident during the course and scope of his employment. An employee of the Broadmoor Hotel failed to stop his vehicle at a red light and struck the truck operated by the Claimant. The Claimant's employer, respondent Anschutz Corporation, and its workers' compensation carrier, respondent National Union Fire Insurance Company (Carrier), admitted liability for workers' compensation and paid the Claimant medical and temporary disability benefits totaling $7,697.00.

The Claimant later brought an action against the Broadmoor Hotel, insured by the Fireman's Fund Insurance Company (Fireman's), for personal injuries resulting from the accident. On July 28, 1985, this personal injury action was settled for $40,000.00; the Claimant received $32,303.00 and the Carrier received $7,697.00. In return for these payments, both the Claimant and the Carrier released in full all their claims and rights against the Broadmoor Hotel and Fireman's.

The Claimant also sought workers' compensation benefits for permanent partial disability. A hearing was held before an administrative law judge (ALJ), who entered his ruling on January 24, 1989. The ALJ found that the Claimant had suffered a 10% permanent partial disability, which entitled him to a disability award of $14,982.24. The ALJ did not require the Carrier to pay this additional amount. Instead, the ALJ allowed the Carrier to credit the $32,303.00 received by the Claimant in settlement of the personal injury action against the $14,982.24 disability award. Since the settlement credit exceeded the award, the Carrier had no liability. The Industrial Claim Appeals Office affirmed the ALJ's ruling. The Colorado Court of Appeals in turn affirmed the decision of the Industrial Claim Appeals Office.

## II.

The Claimant asserts that no part of the settlement in the personal injury action should have been credited against the Carrier's obligation for the disability award. In order to understand and evaluate the Claimant's argument, we outline certain features of the systems for payment of workers' compensation benefits and no-fault benefits. We consider the workers' compensation system first.

### A. The Workers' Compensation System

The Workmen's Compensation Act of Colorado, §§ 8–40–101 to 8–54–127, 3B

C.R.S. (1986) (Workers' Compensation Act),[1] established an administrative system for compensating workers for employment-related injuries and occupational diseases. *See Popovich v. Irlando,* 811 P.2d 379, 381 (Colo.1991). The benefits provided under the workers' compensation system include medical expenses, § 8–49–101 (current version at § 8–42–101), vocational rehabilitation, § 8–49–101,[2] and disability benefits that compensate for lost wages, §§ 8–51–102, –103 (current versions at §§ 8–42–105, –106). These benefits constitute the injured employee's exclusive remedy against the employer for employment-related injuries.[3] § 8–42–102 (current version at § 8–41–102); *Triad Painting Co. v. Blair,* 812 P.2d 638, 641 (Colo.1991); *Popovich,* 811 P.2d at 381.

When the employment-related injury is caused by a third party tortfeasor, the injured employee has several alternatives. *See* § 8–52–108(1) (current version at § 8–41–203(1)). First, the employee may elect to receive workers' compensation benefits. The workers' compensation insurer then is subrogated to the employee's rights against the tortfeasor for the amount of the compensation for which the insurer is liable. Second, the employee may elect to receive workers' compensation benefits and also sue the tortfeasor for damages in excess of the amount of compensation benefits for which the insurer is liable. Again, the insurer is subrogated to the employee's rights against the tortfeasor for the amount of the insurer's workers' compensation liability, so both the employee and the insurer have claims against the tortfeasor. Third, the employee may elect to pursue an action against the tortfeasor. In that event, the insurer is liable for only any deficiency between the recovery from the tortfeasor and the worker's compensation benefits to which the employee is entitled.

■ In general practice these remedies have been combined by allowing the injured employee to file for workers' compensation benefits and sue the tortfeasor for the full amount of damages allowable in tort. *See, e.g., Peterkin v. Curtis, Inc.,* 729 P.2d 977 (Colo.1986); *Kennedy v. Industrial Comm'n,* 735 P.2d 891 (Colo.App. 1986). If the employee recovers from the tortfeasor, the employee must reimburse the insurer for any benefits paid. *Continental Cas. Co. v. Gate City Steel,* 650 P.2d 1336, 1338 (Colo.App.1982). The insurer may also offset any portion of the recovery not used to reimburse the insurer for past benefit payments against any future benefits the insurer may have to pay. *See Peterkin,* 729 P.2d at 980. Under this approach the employee receives interim workers' compensation benefits, recovers from the tortfeasor, reimburses the insurer for the interim benefits, credits the insurer for potential future benefits, and keeps the remainder as excess damages. The employee has an incentive to recover the entire damages from the tortfeasor because the employee does not recover for the excess damages until the workers' compensation benefits have been recovered. Moreover, the insurer's subrogation right allows it to recover its workers' compensation payments from the tortfeasor if the employee does not pursue a tort action or limits the claim to an amount in excess of workers' compensation benefits. This system shifts

---

**1.** The Workmen's Compensation Act of Colorado, in effect at the time of the Claimant's injury, was repealed and reenacted in 1990 as the Workers' Compensation Act, §§ 8–40–101 to 8–47–209, 3B C.R.S. (1990 Supp.). The Workers' Compensation Act was substantially modified in the recently concluded legislative session. *See* An Act Concerning Workers' Compensation, S.B. 91–218 (June 6, 1991).

**2.** The availability of vocational rehabilitation benefits was severely limited by ch. 51, sec. 21, 1987 Colo.Sess.Laws 387, 393–94, and now appears to be at the employer's option. *See* §§ 8–42–105, –111(3), 3B C.R.S. (1990 Supp.).

**3.** An employer complying with the provisions of the Workers' Compensation Act is not

subject to any other liability for the death of or personal injury to any employee, except as provided in said articles [the Workers' Compensation Act]; and all causes of action, actions at law, suits in equity, proceedings, and statutory and common law rights and remedies for and on account of such death of or personal injury to any such employee and accruing to any person are abolished except as provided in said articles.

§ 8–42–102, 3B C.R.S. (1986).

ultimate liability to the tortfeasor, the party responsible for the employee's injuries.

 The workers' compensation insurer's subrogation interest is defined by section 8–52–108(1) (current version at § 8–41–203(1)), which provides:

> If such injured employee or, in case of death, his dependents elect to take compensation under [the Workers' Compensation Act], the payment of compensation shall operate as and be *an assignment of the cause of action against such other person* to the ... insurance carrier liable for the payment of such compensation. Said insurance carrier shall not be entitled to recover any sum in excess of the amount of compensation for which said carrier is liable under said articles to the injured employee, but to that extent said carrier *shall be subrogated to the rights of the injured employee against said third party causing the injury.*

(Emphasis added.) This section does not create a new cause of action or grant the insurer an independent claim against the third party tortfeasor; the insurer merely takes over the employee's claim against the tortfeasor. *Jackson v. Bates,* 133 Colo. 248, 256, 293 P.2d 962, 966 (1956). The insurer's rights against the tortfeasor derive from the rights of the employee, so limitations and restrictions on the employee's rights necessarily apply to the insurer's derivative subrogation rights. *Id.*

(State Compensation Fund's subrogation claim subject to same statute of limitations as injured employee); *cf. Marquez v. Prudential Property & Cas. Ins. Co.,* 620 P.2d 29, 33 (Colo.1980) (determining scope of an insurer's subrogation right under no-fault act).

## B. The No-Fault Act

The Colorado Auto Accident Reparations Act, §§ 10–4–701 to –723, 4A C.R.S. (1987 & 1990 Supp.) (No–Fault Act), governs rights and liabilities for personal injuries resulting from automobile accidents. Owners of motor vehicles are required to maintain minimum insurance coverage. § 10–4–705. This minimum coverage includes "first-party" [4] personal injury protection (PIP) benefits for medical expenses, § 10–4–706(1)(b), occupational rehabilitation, § 10–4–706(1)(c), wage loss, § 10–4–706(1)(d), and death, § 10–4–706(1)(e). In the event of an accident, the no-fault insurer pays these PIP benefits directly to the persons covered by the policy,[5] regardless of fault.

Section 10–4–713(1) (the PIP benefits exclusion) prohibits persons eligible for PIP benefits as well as the no-fault insurer from recovering those PIP benefits from the party responsible for the accident. Section 10–4–714(1) bars tort recovery in automobile accidents unless the automobile accident victim satisfies one of six statutory criteria. Although the automobile accident

---

**4.** Benefits paid by the insurer to cover losses of the insured are first party benefits; benefits paid to third parties to cover losses for which the insured is liable are third party benefits. *Cf. Farmers Group, Inc. v. Williams,* 805 P.2d 419, 421 (Colo.1991) (discussing the tort of bad faith breach of insurance contracts).

**5.** The PIP benefits are applicable to:

(a) Accidental bodily injury sustained by the named insured when injured in an accident involving any motor vehicle, regardless of whether the accident occurs in this state or in any other jurisdiction, except where the injury is the result of the use or operation of the named insured's own motor vehicle not actually covered under the terms of [the No–Fault Act];

(b) Accidental bodily injury sustained by a relative of the named insured under the circumstances described in paragraph (a) of this subsection (1), if the relative at the time of the

accident is a resident in the household of the named insured (whether or not temporarily residing elsewhere), except where the relative is injured as a result of the use or operation of his own motor vehicle not actually covered under the terms of [the No–Fault Act];

(c) Accidental bodily injury arising out of accidents occurring within this state sustained by any other person while occupying the described motor vehicle with the consent of the insured or while a pedestrian if injured in an accident involving the described motor vehicle.

§ 10–4–707(1). If more than one no-fault policy covers the injured person, primary coverage is provided by the policy insuring the vehicle out of the use of which the accident arose. *Id.* at § 10–4–707(3). In this case primary coverage would be provided by the policy insuring the truck driven by the Claimant, and secondary coverage would be available under the policy covering the Claimant's personal vehicle.

victim may bring a tort action if the victim satisfies one of these threshold criteria, the PIP benefits are excluded from any recovery obtained in that tort action. *See Cingoranelli v. St. Paul Fire & Marine Ins. Co.*, 658 P.2d 863, 869 (Colo.1983); § 10–4–713(1).

These constraints on tort recovery contained in sections 10–4–713(1) and 10–4–714(1) reflect the legislative concern with the high costs of the traditional tort liability system. *See* Committee on Automobile Insurance, *Colorado Legislative Council Report to the Forty–Ninth Colorado General Assembly*, Res.Publ. No. 190, 4 (1972) (hereinafter *Committee Report*) (fifty-six percent of automobile insurance premiums went to claims administration and other overhead). These statutory provisions restrict access to the tort liability system with the goal of reducing both administrative costs and tort litigation and its attendant transaction costs. Claims within the PIP coverages are handled directly by first party payments, obviating the need for tort claims. *See* 8D J. Appleman & J. Appleman, *Insurance Law and Practice* § 5182 at 526 (1981). Each insurer absorbs the PIP benefit payments to its insureds. *See Peterson v. Kester*, 791 P.2d 1185, 1188 (Colo.App.1989). Payments made when the insurer's insured is not at fault will be offset by the avoidance of payments to the other party in other accidents when its insured is at fault. Moreover, the significant reduction in overhead, administration and litigation costs compensates insurers for any extra payments. Section 10–4–713 alters traditional tort liability and requires each party in an automobile accident to look to the party's own insurer, not the tortfeasor, for damages covered by the PIP benefits.

### C. PIP/Workers' Compensation Primacy Rule

■ Both the Workers' Compensation Act and the No–Fault Act apply to this case because the Claimant was injured in an automobile accident during the course and scope of his employment. If the injured person

> is a person for whom benefits are required to be paid under the "Workmen's Compensation Act of Colorado", the [PIP benefits] shall be reduced to the extent that benefits are actually provided under [the Workmen's Compensation Act] within the time period for payment of [PIP benefits] prescribed by section 10–4–708.

§ 10–4–707(5) (1983 Supp.).[6] This provision coordinates the workers' compensation and PIP benefits so that the injured person does not receive duplicate benefits. Under this primacy rule, an injured employee "must pursue and exhaust any right to" workers' compensation benefits before the employee can collect PIP benefits. *Comiskey v. Valley Forge Ins. Co.*, 781 P.2d 188, 189 (Colo.App.1989); *see also* Laugesen, *Colorado's PIP/Worker's Compensation Primacy Rule*, 19 Colo.Law. 1093 (1990). The amount of PIP benefits is reduced by the amount of workers' compensation benefits received; the workers' compensation benefits take the place of PIP benefits.[7]

### III.

The Carrier argues that its statutory subrogation right allows it to recoup its workers' compensation payments from the Claimant's settlement with the Broadmoor Hotel. The Claimant asserts that the Carrier cannot obtain reimbursement for the portion of the workers' compensation benefits that took the place of PIP benefits. The PIP benefits exclusion, section 10–4–713(1), exempts tortfeasors from liability for injuries covered by the PIP benefits. The Claimant, relying on *Peterson v. Kester*, 791 P.2d 1185 (Colo.App.1989), maintains that this PIP benefits exclusion prohibits him from recovering from the

6. This subsection was amended in 1987 and again in 1990. It presently appears at § 10–4–707(5) (1990 Supp.). In its current form it refers to benefits "actually available and covered" under the Workers' Compensation Act rather than benefits "actually provided" under that Act.

7. This primacy rule parallels and is consistent with the exclusive remedy provision, § 8–42–102, of the Workers' Compensation Act.

Broadmoor Hotel amounts received from the Carrier as workers' compensation benefits to the extent that those workers' compensation benefits took the place of PIP benefits. *Id.* at 1188 (workers' compensation carrier has neither a derivative right of subrogation nor a direct right of indemnity against tortfeasor for workers' compensation payments not exceeding required PIP coverages in amount or duration). The settlement that the Claimant received from the Broadmoor Hotel, his argument proceeds, therefore must have excluded those benefits. Since the Claimant could not recover those benefits from the Broadmoor Hotel, the Claimant argues that the Carrier cannot require reimbursement by the Claimant for such benefits from the proceeds of his settlement with the Broadmoor Hotel.

### A.

■ We first examine whether the PIP benefits exclusion applies to prevent recovery from a tortfeasor when an injured employee receives workers' compensation benefits in place of PIP benefits. Section 10–4–713(1) provides in pertinent part:

> Neither any person eligible for direct benefits described in section 10–4–706(1)(b) to (1)(e) nor any insurer providing benefits described in section 10–4–706(1)(b) to (1)(e) shall have any right to recover against an owner, user, or operator of a motor vehicle or against any person or organization legally responsible for the acts or omissions of such person in any action for damages for benefits required to be paid under section 10–4–706(1)(b) to (1)(e) . . . .

This restriction would apply to the Claimant and to the Carrier's derivative subrogation right[8] if the Claimant was eligible for PIP benefits. If applicable, the provision prevents recovery in tort for benefits required to be paid under sections 10–4–706(1)(b)–(e) of the No–Fault Act.

Even though the Claimant received workers' compensation benefits in place of PIP benefits pursuant to the primacy rule, he was eligible for PIP benefits. Eligibility for PIP benefits is determined by whether the automobile accident victim meets the requirements of subsections 10–4–707(1)(a)–(c).[9] *See Committee Report* at 7–8, 33. The Claimant occupied the vehicle with the consent of the insured owner, and so was covered pursuant to subsection 10–4–707(1)(c). Since the Claimant was eligible for PIP benefits, the PIP benefits exclusion applies. The Carrier argues that the primacy rule provides the Claimant with workers' compensation benefits, which makes him ineligible for PIP benefits. We reject this argument. The Claimant's eligibility is determined by subsections 10–4–707(1)(a)–(c), not his receipt of PIP benefits; the PIP benefits exclusion applies even to uninsured motorists, who will not receive such benefits. *See Committee Report* at 8.

The Claimant suffered damages in the form of medical expenses and lost income, and subsections (b) and (d) of section 10–4–706(1) require PIP benefits to be paid for those damages. The Carrier contends that the PIP benefits exclusion only prohibits recovery of PIP benefits from the tortfeasor and that the PIP benefits exclusion is irrelevant because the Claimant received workers' compensation benefits, not PIP benefits. Under the primacy rule, § 10–4–707(5), the Claimant received payment from the workers' compensation carrier rather than the no-fault insurer. Nevertheless, the Claimant received benefits for the types of damages covered by sections 10–4–706(1)(b) and (d). Those sections required payment to the Claimant; the primacy rule governs only their source. The workers' compensation benefits substituted for PIP benefits. *See, e.g., Oxford Chemicals, Inc. v. Richardson,* 782 P.2d 843, 845–46 (Colo.App.1989) (workers' compensation insurer ordered to reimburse claimant's no-fault insurer for PIP benefits).

---

**8.** Regardless of whether the Carrier is considered an "insurer providing benefits described in section 10–4–706(1)(b) to (1)(e)," any limitation on the Claimant's right to recover limits the Carrier's derivative subrogation right. *See Jackson,* 133 Colo. at 256, 293 P.2d at 966.

**9.** *See supra* note 4.

In *Peterson v. Kester*, 791 P.2d 1185 (Colo.App.1989), the Colorado Court of Appeals held that section 10–4–713(1), the PIP benefits exclusion, abrogated the workers' compensation insurer's subrogation rights to recover directly from the tortfeasor to the extent that the workers' compensation benefits replace the PIP benefits. The PIP benefits exclusion makes automobile insurers absorb their own insured's PIP losses, thereby furthering the legislative intention to reduce automobile tort litigation. *Peterson*, 791 P.2d at 1188. *Peterson* interpreted section 10–4–707(5), the workers' compensation primacy rule, to mean that the workers' compensation insurer becomes the primary PIP insurer in scope-of-employment automobile accidents. The workers' compensation benefits paid in such accidents should be treated as PIP benefits to the extent they do not exceed required PIP coverages in amount or duration. As the primary insurer in scope-of-employment automobile accidents, the court of appeals reasoned, the workers' compensation insurer must absorb its workers' compensation losses. The court of appeals concluded that the workers' compensation insurer's subrogation right applied only to workers' compensation benefits that exceeded the PIP benefits in amount or duration.

We agree with *Peterson*. When construing a statutory scheme we must determine and give effect to the intent of the legislature, *Farmers Group, Inc. v. Williams*, 805 P.2d 419, 422 (Colo.1991), and adopt the statutory construction that best effectuates the purpose of the legislative scheme, *Concerning M.S. and C.S. v. People ex rel. L.R.S.*, 812 P.2d 632, 635 (Colo.1991); *Smith v. Myron Stratton Home*, 676 P.2d 1196, 1199 (Colo.1984). The No–Fault Act substitutes a universal first party insurance program in place of the traditional tort liability system. The PIP benefits exclusion of the No–Fault Act redefines the rights and liabilities of the automobile accident victim and the tortfeasor by restricting access to the tort system and by limiting the types of damages recoverable. Another important feature of the No–Fault Act is that each insurer absorbs the PIP damages of its own insured. Taken together, these restrictions are intended to reduce the high overhead, administration, and litigation costs attendant to the traditional tort system. The legislative judgment was that these cost reductions would lower automobile insurance premiums and enable accident victims to receive greater compensation.[10] *See Committee Report* at 6. Attaining these benefits from the No–Fault Act requires universal application of the PIP benefits exclusion.

Creating an exception to the PIP benefits exclusion for workers injured in automobile accidents occurring in the course and scope of employment would severely undermine the no-fault system. Workers acting within the course and scope of employment constitute a significant portion of automobile drivers and occupants and presumably a significant portion of accident victims. Such an exception would undercut the goal of reducing administrative and litigation costs. Litigation of small, PIP-covered claims could be expected to increase as workers' compensation insurers seek to recover from third party tortfeasors amounts paid in place of PIP benefits under the primacy rule. Furthermore, the possibility of workers' compensation coverage would force third party tortfeasors and their insurers to prepare for litigation in each case even though damages were within limits of PIP coverage, thereby driving up overhead and administrative costs.

The Carrier argues that the primacy rule modifies the PIP benefits exclusion. However, the primacy rule and the exclusion address separate matters of legislative concern. The PIP benefits exclusion adjusts the rights and liabilities between the automobile accident victim and the tortfeasor. The primacy rule coordinates payment of benefits between the insurers obligated to pay benefits to the victim. Its purpose is

---

**10.** We recognize that our holding in this case assigns financial responsibility for the employee's injuries to the workers' compensation carriers. This may result in higher premiums to employers. On the other hand, the employer's no-fault insurer avoids any liability, which should result in a somewhat commensurate reduction in the employer's no-fault premium.

to prevent duplication of benefits to automobile accident victims.[11] The primacy rule is one of several provisions addressing the provision of benefits to accident victims.[12] These provisions do not purport to adjust the liabilities between the victim and the tortfeasor.

The Carrier's interpretation would distort the policy of the No–Fault Act that each insurer should absorb its PIP payments to its own insured. The tortfeasor's liability for PIP benefits would vary dramatically depending on whether the automobile accident victim received PIP compensation from a workers' compensation carrier, when injuries are sustained in the course and scope of employment, or from a PIP carrier, in all other cases. In an accident involving an employee and a non-employee, the employee could sue the non-employee for PIP benefits, but the PIP benefits exclusion would prohibit the non-employee from suing the employee for such benefits. The non-employee's no-fault insurer could be liable for both parties' losses. This difference in liability is unrelated to the nature of the accident or to the injuries.

In light of these considerations, we conclude that applying the PIP benefits exclusion even when workers' compensation benefits are provided in place of the PIP benefits will best effectuate the No–Fault Act's statutory scheme.

### B.

We next examine whether the Carrier may recover its workers' compensation payments from the Claimant's settlement. Under section 8–52–108(1), the Carrier's subrogation right applies to the amount actually collected by the Claimant. *See Kennedy v. Industrial Comm'n,* 735 P.2d 891, 893 (Colo.App.1986). In *Kennedy,* an injured employee labelled his third party settlement as pain and suffering damages, which are noncompensable under the workers' compensation system. The employee argued that the workers' compensation insurer had no subrogation interest in this pain and suffering award. The court of appeals rejected this argument and held that an injured employee may not unilaterally characterize the nature of the payments received in settlement to avoid the workers' compensation insurer's subrogation right. *Id.* This rule prevents double recovery by the injured employee and protects the workers' compensation insurer's subrogation right by providing incentive to the injured employee to recover from the tortfeasor all elements of the damages sustained by the employee. In this fashion, the tortfeasor, not the workers' compensation insurer, bears ultimate liability for the employee's damages.

The PIP benefits exclusion statutorily bars the Claimant from obtaining his PIP damages from the Broadmoor Hotel, unlike the situation of the *Kennedy* employee who unilaterally characterized the nature of the damages covered by his settlement in an effort to thwart subrogation by the workers' compensation carrier. In the Claimant's situation, the *Kennedy* rule cannot achieve its purpose of shifting ultimate liability to the tortfeasor. If the Claimant was statutorily barred from recovering PIP benefits from the Broadmoor Hotel, then the settlement necessarily excluded the PIP benefits. If *Kennedy* were applied, the Carrier would recover the PIP benefits from the Claimant, who cannot recover them from the Broadmoor Hotel. The reimbursement would come out of the Claimant's recovery for other damage elements, such as pain and suffering, or personal injury in excess of the PIP threshold. In this context the *Kennedy* rule would transfer the burden of the PIP benefits onto the Claimant, a result desired by neither the

---

11. In similar fashion, §§ 10–4–707(3) and (4) coordinate benefits when an injured person would qualify for coverage, pursuant to § 10–4–707(1), under several different no-fault policies, and section 10–4–709 requires coordination of benefits by providers of other benefits. Duplication of benefits was a significant legislative concern because only 14.5% of premiums compensated for economic losses not otherwise compensated while 8% of premiums went to compensate losses also compensated from other sources. *Committee Report* at 4.

12. *See supra* note 10.

No–Fault Act nor the workers' compensation system.

### IV.

We hold that the section 10–4–713(1) PIP benefits exclusion applies to workers' compensation benefits provided in place of PIP benefits pursuant to the primacy rule of section 10–4–707(5). We also hold that the Carrier may not credit the Claimant's settlement against workers' compensation claims for damages covered by the PIP benefits. Accordingly, we reverse the judgment of the court of appeals with directions to return the case to the Industrial Claim Appeals Office for entry of an order consistent with the views expressed in this opinion.