UNITED SECURITY INSURANCE COMPANY, Plaintiff–
Appellant,

v.

Louie SCIARROTA, d/b/a Louie's Pizza, Defendant–Appellee.

No. 93CA0473.

Colorado Court of Appeals,
Div. IV.

April 21, 1994.

As Modified on Denial of Rehearing
June 23, 1994.

Certiorari Denied Dec. 19, 1994.

Deisch, Marion and Breslau, P.C., Brad W. Breslau, Denver, for plaintiff-appellant.

H. Lowell Moore, Colorado Springs, for defendant-appellee.

Opinion by Judge ROTHENBERG.

In this subrogation action to recoup personal injury protection (PIP) benefits paid to its insured, plaintiff, United Security Insurance Company (PIP carrier), appeals from the summary judgment entered in favor of defendant, Louis Sciarrota d/b/a Louie's Pizza (employer). Because we hold that PIP carrier has a claim for equitable subrogation against employer, we affirm in part, reverse in part, and remand for further proceedings.

This action arose from a March 1990 automobile accident in which PIP carrier's insured, William O'Shea, sustained personal injuries.

The complaint alleged that: (1) O'Shea was on duty delivering pizza for employer at the time of the accident and, therefore, was injured within the scope of his employment; (2) in March 1990, employer did not have in effect mandatory workers' compensation insurance covering his employees, including O'Shea; (3) since employer failed to provide such coverage, PIP carrier became liable to pay O'Shea PIP benefits pursuant to O'Shea's automobile insurance policy and § 10–4–706, C.R.S. (1987 Repl.Vol. 4A); (4) PIP carrier has paid O'Shea $15,809.15 in medical benefits and $402 in lost wages resulting from the accident; (5) PIP carrier

would not have been responsible to O'Shea for such benefits if employer had had mandatory workers' compensation insurance on the date of the accident; and (6) under Colo. Sess.Laws 1984, ch. 55, 8–44–107(1), then in effect (reenacted at § 8–43–408, C.R.S. (1993 Cum.Supp.)), O'Shea had the right to sue employer for benefits plus an additional 50 percent penalty for employer's failure to furnish workers' compensation coverage.

Based upon these allegations, PIP carrier asserted the right to bring an action against the employer under alternate theories of primacy reimbursement and subrogation.

The parties filed a joint stipulation of facts in which employer admitted that, on the date of the accident, he did not have in effect workers' compensation insurance as required by Colorado law.

PIP carrier moved for summary judgment and employer filed a response and supporting brief opposing the motion. Based upon the parties' submissions, the trial court denied PIP carrier's motion for summary judgment and dismissed PIP carrier's claim for the 50% penalty. The court concluded that the 50 percent penalty allowed by § 8–44–107(1) was personal to injured employees and their dependents and could not be collected by a third party such as PIP carrier.

After further briefing on the remaining issue of whether a workers' compensation claim could be subrogated, the trial court issued a second order denying PIP carrier's motion for summary judgment and entering summary judgment in favor of employer. The court concluded that the workers' compensation statute does not permit subrogation of a PIP carrier to the rights of an injured employee.

## I. Primacy Reimbursement

### A.

■ What PIP carrier refers to as the "primacy provision" of the Colorado Auto Accident Reparations Act (No–Fault Act), is § 10–4–707(5), C.R.S. (1987 Repl.Vol. 4A). That statute provides that PIP benefits shall be reduced by benefits paid under the Workers' Compensation Act to the extent that such workers' compensation benefits are "ac-

tually available and covered," and it has the effect of making workers' compensation benefits primary for covered benefits. *See Tate v. Industrial Claim Appeals Office*, 815 P.2d 15 (Colo.1991).

In other words, "primacy," when used in *this context, means that the workers'* compensation carrier or the self-insured employer must pay first. *See* Laugesen, *Colorado's PIP/Workers' Compensation Primacy Rule*, 19 Colo.Law. 1093 (June 1990). *See also* § 10–4–709(1), C.R.S. (1987 Repl.Vol. 4A) (*"To avoid duplication of benefits* ... providers of other benefits ... are hereby required to coordinate such benefits...." (emphasis added)).

Relying upon § 10–4–707(5), PIP carrier first contends that it is entitled to recover from employer under a theory of primacy reimbursement because PIP carrier has paid O'Shea PIP benefits that employer should have paid. We disagree.

As previously noted, PIP carrier must also show workers' compensation benefits were *"actually available and covered." Section 10– 4–707(5).

Here, however, it is undisputed that employer did not have workers' compensation insurance at the time of the accident. Nor did either party contend that employer had the resources to pay the claim as a self-insurer.

Under these circumstances, we therefore conclude that workers' compensation benefits were not "actually available and covered" as to O'Shea. For this reason, PIP carrier does not have a claim against employer for primacy reimbursement arising from § 10–4–707(5).

### B.

■ In a related argument, PIP carrier contends that, because employer failed to comply with Colorado law, O'Shea acquired the right to seek compensation benefits and also receive a fifty percent penalty against his employer under § 8–44–107(1), C.R.S. (1986 Repl.Vol. 3B). PIP carrier also asserts a right of primacy reimbursement in the

name of the injured worker against the insurer. Again, we disagree.

Colo.Sess.Laws 1975, ch. 71, § 8–44–107(1) at 293, which was then applicable, provides:

In any case where the employer is subject to the provisions of [the Workers' Compensation Act] and at the time of an injury has not complied with the insurance provisions of said [Act], or has allowed his insurance to terminate ... *the employee, if injured, or, if killed, his dependents* may claim the compensation and benefits provided in said [Act], and in any such case the amounts of compensation or benefits provided in said [Act] shall be increased fifty percent. (emphasis added)

The statute expressly authorizes an injured employee or his dependents to bring an action against the uninsured employer. However, since it does not expressly authorize a similar action by third parties such as PIP carrier, the issue arises whether the concept of primacy reimbursement *impliedly* grants such a right of action. We hold that it does not.

■ The purpose of the primacy rule is to prevent duplication of benefits to persons who have been injured in work-related automobile accidents. *See Tate v. Industrial Claim Appeals Office, supra.*

In *Tate*, our supreme court concluded that a workers' compensation carrier was not entitled to credit for benefits paid to an injured employee that would have been payable by a No–Fault (PIP) carrier. The court observed:

The Carrier's interpretation would distort the policy of the No–Fault Act that each insurer should absorb its PIP payments to its own insured.

*Tate v. Industrial Claim Appeals Office, supra,* 815 P.2d at 22.

The *Tate* court also discussed the relationship between the No–Fault Act and the Workers' Compensation Act, and noted:

Another important feature of the No–Fault Act is that each insurer absorbs the PIP damages of its own insured.... [T]hese restrictions are intended to reduce the high overhead, administration and litiga-

tion costs attendant to the traditional tort system.

*Tate v. Industrial Claim Appeals Office, supra,* 815 P.2d at 21. *See also Peterson v. Kester,* 791 P.2d 1185 (Colo.App.1989) (workers' compensation carrier had no derivative right of action against tortfeasor to recover benefits paid to claimant to the extent that PIP benefits would have been payable under the No–Fault Act).

We also agree with employer that, absent a specific provision in the No–Fault Act or the Workers' Compensation Act, the General Assembly may not be deemed to have created a private tort remedy favoring No–Fault carriers for an employer's failure to obtain workers' compensation coverage.

In *Allstate Insurance Co. v. Parfrey,* 830 P.2d 905, 911 (Colo.1992), the supreme court addressed the requirements for inferring a private right of action for violation of a statutory duty such as that imposed upon employers to secure workers' compensation coverage:

Our case law has indicated that the answer to whether a private tort remedy is available against a nongovernmental defendant for violating a statutory duty involves a consideration of three factors: whether the plaintiff is within the class of persons intended to be benefitted by the legislative enactment; whether the legislature intended to create, albeit implicitly, a private right of action; and whether an implied civil remedy would be consistent with the purposes of the legislative scheme.

After analyzing the No–Fault Act and the Workers' Compensation Act in light of these factors, we conclude that no private tort remedy favoring No–Fault carriers is implicit in § 8–44–107(1) or in the statutory scheme. *See* § 10–4–713, C.R.S. (1987 Repl.Vol. 4A).

■ Automobile insurance carriers are not within the class of persons intended to be protected by the Workers' Compensation Act. *See Bellendir v. Kezer,* 648 P.2d 645 (Colo.1982) (purpose is to protect employees who sustain industrial injuries). Similarly, the purpose of providing the remedy in § 8–44–107(1) is to award additional compensation to an injured *employee* when the em-

ployer has failed to carry workers' compensation insurance. *Eachus v. Cooper*, 738 P.2d 383 (Colo.App.1986). Finally, one of the primary purposes of the No–Fault Act is to avoid inadequate compensation to victims of automobile accidents. *See Meyer v. State Farm Mutual Automobile Insurance Co.*, 689 P.2d 585 (Colo.1984) (clause in insurance policy which attempted to dilute, condition, or limit statutorily mandated coverage was contrary to public policy).

Accordingly, we hold that if, as here, an injured worker has not received duplicate benefits, his No–Fault carrier has no derivative right under a primacy reimbursement theory to assert a claim against the worker's uninsured employer pursuant to § 8–44–107(1), C.R.S.

## II. Contractual Subrogation

■ PIP carrier next contends that, pursuant to the language of the subrogation clause in its automobile policy, it was subrogated to the rights of its insured, O'Shea. We disagree.

The subrogation clause in PIP carrier's automobile policy with O'Shea concludes with the following sentence: "The company shall be entitled to a recovery *only* after the person has been fully compensated for damages *by another party*." (emphasis supplied)

Here, however, O'Shea has not been compensated by a third party but by the PIP carrier itself. And, nothing in the record suggests that he was even partially compensated by his employer or that he attempted to obtain direct benefits from the employer who alleged severe financial difficulties. Accordingly, subrogation is not justified by the language of PIP carrier's auto policy.

## III. Equitable Subrogation

■ However, we do agree with PIP carrier's final contention that it has a right of equitable subrogation against employer.

■ At least two reasons have been given for allowing subrogation: (1) to prevent the insured from recovering twice for one injury; and (2) to compel wrongdoers to bear the ultimate costs and prevent them from receiving windfalls. *Blue Cross v. Bukulmez*, 736

P.2d 834 (Colo.1987). As stated in 16 G. Couch, *Cyclopedia of Insurance Law* § 61:18 (R. Anderson 2d ed. 1983):

> Stated simply, subrogation is a creature of equity having for its purpose the working out of an equitable adjustment between the parties by securing the ultimate discharge of a debt by the person who in equity and good conscience ought to pay it.

> Subrogation implies the restoration of the amount paid by a surety or other similar person, and restoration of that amount only.

> . . . .

> [W]hen the insurer has made payment for the loss caused by a third party, it is only equitable and just that the insurer should be reimbursed for his payment to the insured, because otherwise either the insured would be unjustly enriched by virtue of a recovery from both the insurer and the third party, or in the absence of such double recovery by the insured, the third party would go free notwithstanding the fact that he has a legal obligation in connection with the damage.

Thus, in *Blue Cross v. Bukulmez, supra,* our supreme court upheld the right of insurers to equitable subrogation for medical benefits paid to their insured which should have been paid by another party under PIP. *See also Union Insurance Co. v. RCA Corp.*, 724 P.2d 80 (Colo.App.1986); Laugesen, *supra,* 19 Colo.Law. at 1094 ("Permitting the self-insured person to avoid purchase of worker's compensation insurance rewards deviousness and requires its subsidization by other PIP policyholders.").

Applying those principles to the circumstances here, we conclude that PIP carrier has a claim against employer based upon equitable subrogation for restoration of the amounts actually paid by insurer that should have been paid by employer pursuant to the workers' compensation scheme. This result furthers the principles behind equitable subrogation by "securing the ultimate discharge of a debt by the person who in equity and good conscience ought to pay it." Couch, *supra,* at § 61:18. And, because the PIP

carrier's claim is based upon equitable principles, it is immaterial that the language of the insurance policy here does not permit subrogation. *See* Couch, *supra,* at §§ 61:18–61:20.

Accordingly, the trial court erred in granting summary judgment in favor of employer.

 We also note, however, that subrogation is not a matter of right but is purely equitable in nature and "it will not be enforced when it would work injustice to the rights of those having equal equities." Couch, *supra,* at § 61:20.

Thus, on remand, the trial court should consider all relevant evidence regarding the competing equities involved in this case and determine whether equitable subrogation should be granted.

The judgment is affirmed in all respects except as to employer's claim of a right to equitable subrogation. As to that claim, the judgment is reversed, and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

PLANK and MARQUEZ, JJ., concur.