**Richard W. ECKHARDT, Petitioner,**

v.

**VILLAGE INN (VICORP), Great American Insurance Company and the Industrial Claim Appeals Office of the State of Colorado, Respondents.**

**No. 90SC701.**

Supreme Court of Colorado,
En Banc.

March 10, 1992.

Bradley R. Irwin, Anthony L. Sokolow, Ozer & Trueax, P.C., Denver, for petitioner.

Douglas A. Tabor, Watson, Nathan & Bremer, P.C., Denver, for respondents Village Inn and Great American Ins. Co.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Mary Karen Maldonado, First Asst. Atty. Gen., Human Resources Section, Denver, for Industrial Claim Appeals Office.

Robert W. Klingler, Denver, for amicus curiae Colorado Compensation Ins. Authority.

Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari to consider whether the court of appeals erred in affirming the decision by the Industrial Claim Appeals Office (Panel) to terminate future worker's compensation benefits payable to the claimant, Richard K. Eckhardt. In an unpublished opinion, the court of appeals held that the Colorado Workmen's Compensation Act, now called the Workers' Compensation Act (Act), does not require an employer and/or its insurance carrier to act reasonably in withholding consent to a compromise or settlement of a suit by an injured employee against the alleged third-party tortfeasors. *Eckhardt v. Village Inn*, No. 90CA0060 (Colo.App. Oct. 11, 1990). We reverse.

### I.

On April 24, 1985, Eckhardt was injured in a highway accident in Missouri.[1] When the accident occurred, Eckhardt was working within the scope of his employment with Village Inn, Inc. (Vicorp). Eckhardt slowed for a truck which turned onto the highway and another truck hit the rear of Eckhardt's vehicle. Because of the injuries sustained in the accident, Eckhardt claimed and received worker's compensation benefits from Vicorp and its insurance carrier, Great American Insurance Company (carri-

er), respondents. Both the employer and the carrier filed a general admission of liability and paid Eckhardt temporary disability benefits and costs of medical care.

Eckhardt commenced an action in the United States District Court for the Western District of Missouri against the owner and operator of the truck which struck his vehicle. Eckhardt notified the respondents, including the carrier's adjuster, Gallagher Bassett Insurance Services (adjuster), of the suit. The carrier then notified counsel for the alleged third-party tortfeasors of its subrogated interest in the suit. Neither Vicorp nor the carrier participated directly in Eckhardt's suit.

Several weeks before the date when the suit was scheduled for trial, Eckhardt's attorney concluded that a successful suit was unlikely because it appeared that the defendants were not clearly at fault or at least were not primarily at fault for the accident, because Eckhardt's medical witnesses were less than certain as to the causes of his injuries, and because questions arose as to the applicability of the defendants' insurance coverage. In addition, defense counsel argued that Eckhardt himself caused the accident by slowing too early for the truck entering the highway. As a result, settlement negotiations began between Eckhardt and the defendants. The defendants offered settlement in the amount of $12,500.

Eckhardt's attorney, pursuant to section 8-52-108(2), 3B C.R.S. (1986),[2] sought the carrier's approval of the settlement amount. During the course of negotiations, the carrier, via its adjuster, offered to approve a settlement in which the carrier would receive $7,000 and a complete release from its obligation to pay Eckhardt any future benefits related to his claim under the Act. Because those terms were not acceptable to Eckhardt, the negotiations reached an impasse, and the adjuster refused to consent to any settlement not

---

1. No findings of fact were made in the administrative proceeding below and the record of the Missouri federal court case is not before us. For purposes of this opinion, the facts are taken from the pleadings and evidence in the record but because the facts must be determined on remand, our recitation of the facts is not dispositive.

2. Recodified in section 8-41-203(2), 3B C.R.S. (1991 Supp.).

sufficient to indemnify fully the carrier for its subrogated interest, which at the time was over $11,000.

Denied the carrier's approval, Eckhardt nevertheless settled with the defendants for $12,500. The defendants issued an initial check for that amount, payable to the adjuster, to Eckhardt and to Eckhardt's attorney. The adjuster, however, refused to endorse the check. Eckhardt's attorney informed the federal district court by letter of this impediment to the distribution of the proceeds. A copy of this letter was sent to the adjuster. The court, after a hearing, ordered the defendants to make the payment to the registry of the court, and the court then distributed the proceeds according to Missouri law. Of the $12,500, the carrier received $5,960.20 for its subrogated interest, Eckhardt's attorneys received $6,089.63 for expenses and fees, and Eckhardt received the remainder, $450.17.

Thereafter, the carrier petitioned the Colorado Division of Labor to suspend Eckhardt's benefits, which he continued to receive for medical treatment for the injuries sustained in the accident. The administrative law judge found that Eckhardt had forfeited any future benefits by settling the suit without the carrier's consent. The Panel affirmed. The court of appeals also affirmed, rejecting Eckhardt's argument that there should be certain exceptions to the harsh rule of forfeiture established in our decision in *Matter of Death of Peterkin*, 729 P.2d 977 (Colo.1986).

## II.

■ We granted certiorari to determine whether, under the Act, an insurance carrier's refusal to approve a settlement of a suit by the injured employee against the third-party tortfeasor must be reasonable. We hold that an insurance carrier, which has been properly notified about a suit brought in good faith by the injured employee, has an obligation to act reasonably when an injured employee requests approval of a settlement in such a suit. This obligation to act reasonably means that an insurance carrier must itself make a good faith appraisal of the suit and any proposed

settlement and must act accordingly. This rule of reasonable refusal is supported by our precedents and is required to further the intent and purposes of the Act.

### A.

Recently, in *Scott Wetzel Services, Inc. v. Johnson*, 821 P.2d 804, 811 (Colo.1991), we held that the "duty of good faith and fair dealing owed by insurers and self-insurers to workers' compensation claimants is rooted in the Act." We decided the issues there "with an eye towards serving the purposes behind the workers' compensation system." *Id.* at 812. Again, in *County Worker Comp. Pool v. Davis*, we applied a rule of equitable apportionment although the Act "is totally silent on the issue of apportioning attorney fees and court costs incurred by the injured employee in the tort litigation against the tortfeasor responsible." 817 P.2d 521, 525 (Colo.1991). Similarly, in *Peterkin*, 729 P.2d 977 (1986), we fostered the purposes of the Act by construing section 8–52–108(2), 3B C.R.S. (1986), as standing for a rule of forfeiture in the circumstances of that case.

In *Peterkin*, the claimant was a widow who received death benefits under the Act. She brought an action for wrongful death in the federal district court for Kansas against the alleged third-party tortfeasors. The federal "court approved a $100,000 settlement between Peterkin and the third party tortfeasors, compromising [a] $500,000 judgment." *Peterkin*, 729 P.2d at 978. We were required to construe section 8–52–108(2), 3B C.R.S. (1986), the same provision which is applicable in the present case. The statute states in relevant part:

A compromise of any [third-party] action by the employee or his dependents at an amount less than the compensation provided [under the Act] shall be made only with the written approval of the ... insurance carrier liable to pay the same.

We construed this section to stand for a rule of forfeiture, acknowledging that the rule is only " 'sometimes explicitly laid down in statute,....' " *Peterkin*, 729 P.2d at 981 (quoting 2A A. Larson, *Larson's*

*Workmen's Compensation Law,* § 74.17 (1982)). We supported that construction with cases from other jurisdictions and with sound policy considerations and held that if "an employee fails to procure the insurer's consent in accordance with section 8–52–108(2), the employee forfeits his or her right to receive future benefits." *Id.* at 981. Because the rule of forfeiture is not explicitly laid down in section 8–52–108(2), the protection afforded to the employer or insurance carrier by the rule of forfeiture was the result of our effort to further the intent and purpose of the law.

We qualified our holding in *Peterkin,* however, by noting that the "harsh rule of forfeiture" may not apply when "the insurer unreasonably refuses to consent to the employee's settlement." In that event, a different rule may be required for the protection of the employee. *Peterkin,* 729 P.2d at 981, n. 2. By virtue of this qualification, we clearly acknowledged the likelihood of a case where the insurance carrier's refusal to consent to a settlement would be unreasonable. Whether the carrier's refusal to consent is reasonable or unreasonable depends on the circumstances, which include the adequacy of notice of the suit given by the injured employee to the carrier and the carrier's own actions to protect its rights under the relevant statutes once notice is received.

We noted in *Peterkin* that the "record contain[ed] no evidence that Peterkin either notified Great West [the insurance carrier] of the pending suit, informed it of the outcome, or procured its consent to the $100,000 settlement." 729 P.2d at 979. In contrast to the complete lack of notice in *Peterkin,* it appears that the insurance carrier here was fully informed by counsel for the injured employee of the commencement of the suit and the suit's venue in the United States District Court for the Western District of Missouri. The record also indicates that the carrier notified counsel for the alleged tortfeasor of its subrogation interest in the case. Eckhardt also claims that he informed the carrier of the suit's changing fortunes. In addition, after the insurance carrier refused to endorse the initial settlement check, the carrier apparently was informed, by receipt of a copy of a letter from the employee's counsel to the federal district court, that another attempt would be made to distribute the proceeds of the settlement by other means. This letter may constitute sufficient notice that the distribution might occur by order of the court, as it did. Whether the injured employee provided adequate notice to trigger the application of the rule of reasonable refusal must be determined by the administrative law judge.

■ Without notice, the carrier has no opportunity to assert its rights in a case which may result in an improvident settlement by the injured employee. Where notice is not given, there is no duty to act reasonably because the carrier is unaware that it should act at all. Thus, the carrier's interest is jeopardized only when the carrier remains ignorant of the third-party suit. Those interests are not jeopardized when the carrier is fully aware of the commencement of the suit, its developing prospects as trial approaches, and the available opportunities for settlement. With notice, the carrier is in a position properly to assert its rights under the relevant statutes, including section 8–52–108(1), 3B C.R.S. (1986), which should be construed together with section 8–52–108(2).

**B.**

We must presume that the entire statutory scheme is intended to be effective and that the legislature intended a just and reasonable result. § 2–4–201(1)(b) and (c), 1B C.R.S. (1980). *See County Workers,* 817 P.2d 521, 526 (where we were "mindful that the legislature, in enacting the Workers' Compensation Act, intended to achieve a just and reasonable result."). Further, the legislature tells us that, in enacting a statute, the public interest is favored over any private interest. § 2–4–201(1)(e), 1B C.R.S. (1980). In construing statutes, we also may consider the object sought to be attained and the consequences of a particular construction. § 2–4–203(1)(a) and (e).

Section 8–52–108(1) creates a system of options for employers, insurance carriers

and injured employees.[3] Under the statute, once an injured employee receives workers' compensation benefits, the "payment of compensation shall operate as and be an assignment of the cause of action" against the third-party tortfeasor to the insurance carrier liable for such compensation. In addition to the assignment of the cause of action to the carrier, section 8–52–108(1) provides that the insurance carrier "shall be subrogated to the rights of the injured employee" to the extent of its liability for compensation to the employee. *See County Workers,* 817 P.2d at 524.

The scope of the rights which the carrier enjoys by virtue of the statutory assignment and subrogation was addressed by the court of appeals in *Kirkham v. Hickerson Bros. Truck Co.,* 29 Colo.App. 303, 485 P.2d 513 (1971). There, the court of appeals construed the corresponding section of the former Workmen's Compensation Act, section 81–13–8 C.R.S. (1963). After noting that "[a]ssignment and subrogation are not one and the same," 485 P.2d at 516, the *Kirkham* court, relying on decisions from this court, held that rights which vest by the assignment are limited to the rights of subrogation. The *Kirkham* court thus concluded that the insurance carrier may settle as to its rights with the third party, "with or without the consent of the employee." The carrier may not, however, "compel the employee to abandon or compromise his cause of action." *Kirkham,* 485 P.2d at 517–18.

This view was strengthened by a subsequent amendment to section 81–13–8, C.R.S. (1963), which specifically provided for the right of the injured employee to proceed against the third-party tortfeasor even when compensation is received from the insurance carrier.[4] The employee may "proceed against the third party causing the injury to recover any damages in *excess* of the subrogation rights" otherwise provided by the statute (emphasis added). This provision was retained in section 8–52–108(1) and is now codified in section 8–41–203(1), 3B C.R.S. (1991 Supp.). "The insurer, however, is not permitted to recover any sum in excess of the amount of workers' compensation for which the insurer is liable to the injured employee." *County Workers,* 817 P.2d at 524.

The purpose of this system of options is to "shift[ ] the ultimate liability to the tortfeasor, the party responsible for the employee's injuries." *Tate v. Industrial Claim Appeals Office,* 815 P.2d 15, 17–18 (Colo.1991); *County Workers,* 817 P.2d at 524–25. That is, section 8–52–108(1) does not merely allow the carrier (by assignment or subrogation) and/or the injured employee to recover from the third-party tortfeasor, but in effect provides an incentive to recover from the third party to the fullest extent allowed in a tort claim. *Tate,* 815 P.2d at 17. *Kirkham,* 485 P.2d at 517 (citing 2A Larson, *Workmen's Compensation Law* § 74.16). When such recoveries are made by the injured employee, the burdens on the employer and its carrier are lessened since they are reimbursed for benefits already paid and given credit against future benefits. *Tate,* 815 P.2d at 17. Thus, because the system of options and incentives provided by section 8–52–108(1) is intended to serve the interests of employers (and their carriers) and injured employees, the consent requirement of section 8–52–108(2) must be construed to harmonize or to further, not to defeat, both parties' interests as recognized and structured by the Act.

■ The incentive to bring an action against the third-party tortfeasor, however, is not necessarily of the same dimension for the insurance carrier and the injured employee. The carrier in any suit against the third-party tortfeasor is limited to re-

---

**3.** We reject the suggestion that the employer is solely dependent on the enlightened self-interest of the carrier. That argument is not consistent with the legislative scheme and also now has been firmly rejected by later statutory enactment. *See* § 8–40–102, 3B C.R.S. (1991 Supp.) (the General Assembly recognizes "that the workers' compensation system in Colorado is based on a mutual renunciation of common law rights and defenses by employers and employees alike").

**4.** *See* Ch. 271, sec. 15, § 81–13–8, 1973 Colo. Sess.Laws 948–49.

covering the compensation it has paid or is liable to pay to the injured employee, *County Workers*, 817 P.2d at 524, *Kirkham*, 485 P.2d at 516, while the injured employee is not so limited but can recover greater damages under a common law tort action. Thus, an injured employee often has a greater incentive than the carrier to sue the third party who may be liable for the injuries. This is especially true in those cases where the carrier believes that the costs of litigation and attorneys' fees may exceed its liability to the injured employee. *See Tate*, 815 P.2d at 17.

A consequence of this system of options and incentives is that, among the many suits brought by injured employees against third-party tortfeasors, there inevitably will be a suit like the one here. That is, an injured employee will commence suit in good faith to recover an amount exceeding the amount subrogated to the carrier.[5] The suit, however, will develop in such a way that the best *de facto* alternative is to accept a settlement offer which is less than the subrogated amount but is still reasonable in light of the evidence. Upon discovery and investigation, the evidence may indicate that the alleged third-party tortfeasor was in fact not a tortfeasor, or was only minimally at fault. The statute does not, and should not be read to, create a lottery at which an injured employee risks all future compensation from the insurance carrier by exercising his option to file a good faith action against the alleged third-party tortfeasor for the excess of the carrier's subrogated rights.

We cannot ignore the fact that without the lawsuit filed by the injured employee, in those cases where the carrier itself does not proceed against the third-party tortfeasor by its right of subrogation, the carrier remains liable for the entire compensation award to the employee. In fact, imposing no duty on the carrier to act reasonably when refusing to consent to a settlement offer would only work to diminish the number of actions initiated by employees against third-party tortfeasors.

The result would be contrary to the intent and purposes of the Act and to employers' best interests because their carriers will not receive any reimbursement from the third parties responsible. Some measure of reasonableness on the part of the carrier in a case such as this therefore is required.

■ A carrier must fairly and reasonably evaluate the suit before refusing approval of the settlement. Once it has been apprised that a good faith suit by the injured employee has deteriorated, the carrier cannot simply seize that opportunity to relieve itself of the obligation to pay future compensation by withholding consent. Without the suit by the injured employee here, the carrier not only would have had to continue paying future workers' compensation benefits, but it would not have been indemnified with approximately half of the total $12,500 paid by the alleged tortfeasor to settle the suit. Likewise, had the injured employee voluntarily dismissed his suit because of the carrier's refusal to consent, assuming that dismissal was a possible option, the carrier would have had to continue paying future benefits without half of the settlement amount.

### C.

■ Because adequate notice to the carrier of the suit and its developing fortunes triggers the duty of a good faith refusal, the issue becomes how to determine when a refusal to consent to a settlement is unreasonable given such notice of the suit and its plunging prospects. The rule cannot be that the carrier must consent simply because the employee has given notice. Rather, after adequate notice is given, it is the carrier's actions taken in light of all the circumstances which determine whether its refusal to consent was reasonable or unreasonable. Absent a rule of reasonable refusal, in certain cases a carrier will be motivated to withhold consent to a settlement, not because the settlement would be inimical to its subrogated

---

**5.** According to the preserved deposition testimony, Eckhardt's attorney initially valued the suit between $20,000 and $50,000, the lower range of which exceeded the carrier's subrogated interests at that point.

interests, but because withholding consent would redound to its self-interest in that the carrier thereby would be relieved of its obligation to pay future benefits under an unqualified rule of forfeiture.

The fact that the carrier had a reasonable opportunity to timely intervene in the underlying suit and failed to do so is evidence particularly relevant in adjudicating a claim that the carrier acted unreasonably. That is, a timely intervention, after adequate notice, is evidence which shows that the carrier's subrogated interests in fact may be jeopardized and which therefore is entitled to great weight. As indicated, because the election of compensation under the statutes operates as an assignment of the cause of action to the carrier, the carrier had its own power to act. Although the rights vesting by the assignment and the subrogation provided by the statute are not absolute, neither are they inert attributes of the carrier's self-interest. Thus, the carrier's subrogated right is not a right just waiting to be violated by the employee. Rather, the rights accruing to the carrier by assignment and subrogation are rights which can be, and should have been, *exercised* by the carrier. Thus, in *County Workers*, we held that an "insurer has the right to intervene and participate in the employee's tort action against a third party or may elect to file a separate claim against the tortfeasor." 817 P.2d 521, 526, n. 5.

Here, for example, it appears that the carrier had an adequate opportunity to intervene in the suit by the injured employee against the tortfeasor under principles of conflict of laws which govern federal practice.[6] Without the carrier's participation, the federal court distributed the proceeds of the settlement according to Missouri law. Had the carrier intervened to protect its own interests it might have argued successfully that Colorado law applied.

*Brown v. Globe Union, a Div. of Johnson Controls*, 694 F.Supp. 795, 798 (D.Colo. 1988) ("When resolving a dispute over subrogation rights, there are strong reasons for applying the law of the state whose workers' compensation law was invoked by the employee-claimant to recover workers' compensation benefits."). In *Brown*, the carrier intervened " 'for the limited purpose of preserving [its] right to recover pursuant to C.R.S. § 8–52–108.' " 694 F.Supp. at 796.

Thus, by intervening in the Missouri suit, the carrier could have pleaded relevant Colorado law, including *Peterkin* and *County Workers*, if its subrogated interests had been jeopardized by the potential settlement. As it was, the federal court proceeded entirely under Missouri law. Had the carrier reasonably and timely intervened, assuming there was no bar to the intervention, some other disposition of the Missouri case might have occurred, possibly including a court-ordered settlement which preserved the subrogated rights of the carrier as against the third-party tortfeasor.[7] Despite the foregoing comments, because the record here was not developed according to the rule of reasonable refusal, this case must be remanded to the administrative law judge for a determination of the facts and issues based on the evidence presented by the parties.

### III.

We summarize the requirements of an adjudication of a petition by a carrier to suspend benefits under the rule of reasonable refusal. Once the petition is filed, an injured employee who claims the carrier unreasonably withheld its consent to settlement must show the following. First, the employee gave adequate notice of the suit and its changing fortunes, and notice of the proposed settlement to the carrier. Sec-

---

6. *See* 3B *Moore's Federal Practice* ¶ 24.13: A timely application to intervene under the federal rules of civil procedure is "not measured merely from the time the action was commenced, or even from the time that the applicant was aware of the action, but from the time that the applicant was aware that its interests might be adversely affected by the litigation."

7. *See, e.g.,* 2A Larson, *Workmen's Compensation Law* § 74.17(e) ("Ordinarily a third party who settles with the employee-plaintiff without carrier consent (or court approval where relevant) remains liable to the subrogee carrier ... since he must be held to know that he cannot evade his liability to the carrier as subrogee by a settlement with the employee.").

ond, the proposed settlement was reasonable under all the circumstances. Third, the employer or carrier unreasonably failed to intervene in the underlying suit. If notice of the suit or the proposed settlement was inadequate, or if the settlement was unreasonable, or if the carrier timely intervened in the suit, then the petition to suspend benefits should be granted under the rule of forfeiture.

We reverse and remand to the court of appeals with directions to return the case to the administrative law judge for further proceedings consistent with the views expressed in this opinion.

ROVIRA, C.J., dissents.

ERICKSON, J., dissents, and VOLLACK, J., joins in the dissent.

Chief Justice ROVIRA dissenting:

The majority today holds that, not only does a subrogated insurance carrier have an obligation to act reasonably in determining whether to consent to settlement of a third-party suit, but the carrier is obligated to make a good faith appraisal of the suit and act accordingly, which may include intervention in the third-party suit as a demonstration of reasonableness. *See* maj. op. at 858, 862. Because I believe that the majority's decision interposes a rule into the Colorado Workers' Compensation Act (the Act) which derogates from the long-established principle that such rule-making is the province of the General Assembly, I respectfully dissent.

### I

The majority finds that, once a carrier is given notice of a third-party lawsuit, a duty arises on the part of the carrier to act reasonably and in good faith in determining whether to grant consent. I believe, however, that under the current statutory scheme, there is no obligation on an insurance carrier that neither participated in nor encouraged settlement negotiations to act other than in its own perceived best interest in determining whether to consent to settlement.

We recently outlined the statutory scheme from which the right of subrogation arises. When a third-party tortfeasor causes the employment-related injury and the employee has chosen to receive workers' compensation benefits and also to sue the tortfeasor, the insurer is subrogated to the employee's rights against the tortfeasor for the amount of the insurer's workers' compensation liability. The statutory scheme allows the employee to receive interim workers' compensation benefits, recover from the tortfeasor, reimburse the insurer for interim benefits, credit the insurer for owed future benefits and keep the remainder as excess damages. *Tate v. Industrial Claim Appeals Office*, 815 P.2d 15, 17 (Colo.1991). The Act also permits the injured claimant to settle with the third-party tortfeasor. A settlement for an amount less than the insurer's total liability for past or future workers' compensation benefits requires the written approval of the insurer. § 8–52–108(2), 3B C.R.S. (1986). Since the subrogation right and any limits on that right are, therefore, statutorily derived, I start by examining the statutes to decide if they are the source of a duty on the part of an insurer to act other than in its own self interest in determining whether to consent to a settlement between the insured and the third-party tortfeasor.

### A

In construing a statute, we are to ascertain and give effect to the legislature's intent where possible. Where statutory language is plain and its meaning clear, we must apply it as written. *Danielson v. Castle Meadows, Inc.*, 791 P.2d 1106, 1111 (Colo.1990); *Griffin v. S.W. Devanney & Co.*, 775 P.2d 555, 559 (Colo.1989). Section 8–52–108(2), 3B C.R.S. (1986), states:

A compromise of any ... [third party liability action] by the employee or his dependents at an amount less than the compensation provided for by articles 40 to 54 of this title *shall* be made only with the written approval ... of the person,

association, corporation, or insurance carrier liable to pay the same.[1]

(Emphasis added.) Nothing in the language of this statute requires the carrier to act in any particular manner in determining whether to give approval to the compromise. We have consistently held that, since the legislature is the branch empowered to change the Act, a court should not read nonexistent provisions into the Act. *Kraus v. Artcraft Sign Co.*, 710 P.2d 480, 482 (Colo.1985). *See also Chartier v. Winslow Crane Service Co.*, 142 Colo. 294, 317, 350 P.2d 1044, 1056 (1960) (where this court refused to "read or interpret ... limitations into the Workmen's Compensation statutes," and consequently found that an employee had a cause of action against a contractor where the statute proscribed suits against third persons "in the same employ").

In *In re Death of Peterkin*, 729 P.2d 977 (Colo.1986), in affirming suspension of future workers' compensation benefits to a claimant who settled for an amount less than that necessary to discharge the employer's insurer without first obtaining the carrier's consent, we raised the possibility in a footnote that "[o]ther protections may be required where the insurer unreasonably refuses to consent to the employee's settlement." *Id.* at 981 n. 2. The majority reads this statement as an acknowledgement that "a different rule may be required for the protection of the employee" where the refusal to consent is unreasonable. *See* maj. op. at 859. The statement does not, however, establish any unreasonableness or bad faith exception to the rule of forfeiture, but simply suggests that an unreasonable refusal to consent presents a situation where other protections may be required. The protections to be afforded, however, remain the province of the legislature,[2] and it is not the role of the judiciary to read a nonexistent requirement to act reasonably into section 8–52–108(2).

The majority implies that, since we were willing to read the rule of forfeiture into section 8–52–108(2), *see* maj. op. at 859, then we are being consistent with our past exercises of judicial power by now imposing a duty into section 8–52–108(2) to act reasonably in determining whether to consent to settlement. In *In re Death of Peterkin*, 729 P.2d 977, 981 (Colo.1986), we accepted the rule of forfeiture whereby a claimant who fails to obtain the carrier's consent to settlement before settling a third-party claim as mandated by section 8–52–108(2) forfeits his or her right to receive all future benefits from that carrier. While the rule of forfeiture is not expressly existent in the provision, it is implied by the mandatory language of section 8–52–108(2). The provision states that "[a] compromise ... *shall be made only with the written approval* of the ... carrier liable to pay the same." (Emphasis added.) The rule of forfeiture that we adopted in *Peterkin* was the result of not only policy considerations (*see infra* section I B) but also was derived from the nondiscretionary nature of the requirement to obtain consent. The obligation to obtain consent is placed on the claimant. Consequently, failure to comply with the mandate results in a disadvantage to the noncompliant party. Conversely, section 8–52–108(2) does not impose any obligation at all on carriers. Therefore, to now impose an obligation on these parties would be to overstep the bounds of our judicial power.

---

1. When the Act was recodified and reenacted in 1990, substantial amendments were made. This section, however, remained unchanged, indicating legislative satisfaction with the language of the provision.

2. By statute, other jurisdictions protect employees from unreasonable refusal by a carrier to consent by providing for a judicial compromise order or court approval of a settlement as an alternative to carrier consent. *See, e.g.,* Ark. Code Ann. § 11–9–410 (Michie 1987); Neb.Rev. Stat. § 48–118 (1988); N.Y.Work.Comp.Law § 29(5) (McKinney 1991 Supp.). Such judicial order protects the employee's right to future compensation in the absence of obtaining the employer or carrier's consent. *Schnabel v. Grimes,* 31 A.D.2d 375, 298 N.Y.S.2d 271, 274 (N.Y.App.Div.1969).

In *Ostolski v. C.M.H. Co.,* 28 A.D.2d 1036, 283 N.Y.S.2d 798, 801–02 (N.Y.App.Div.1967), the court explains that the legislature amended the New York statute to permit a claimant to settle without the consent of the carrier by order of the court in order to promote the spirit and purpose of the Act.

## B

Since the obligation does not arise from the language of the statute itself, I examine whether the judicially imposed duty of good faith and fair dealing that workers' compensation carriers owe claimants requires carriers to act other than in their own self interest in determining whether to consent to third-party settlement offers.

Recently, we found that independent claims adjusting companies acting on behalf of self-insured employers owe a duty of good faith and fair dealing to claimants of workers' compensation benefits. *Scott Wetzel Services v. Johnson*, 821 P.2d 804, 813 (Colo.1991). Our rationale for imposing the duty in *Wetzel* was twofold. We sought both to protect the employee from the disparity of wealth and resources heavily favoring the insurance carrier and to serve the purposes of the Act, which include assisting injured workers and their families and promoting the speedy resolution of claims arising out of employment-related activities. *See Wetzel* at 810, 812.

Our decision in *Wetzel* was based in part on our earlier decision in *Travelers Insurance Co. v. Savio*, 706 P.2d 1258, 1273 (Colo.1985), where we found that an insurance carrier who provides workers' compensation benefits to an employee owes the employee a duty of good faith and fair dealing. Similar to *Wetzel*, our purpose in imposing the duty in *Savio* was to remedy the bargaining disadvantage suffered by injured workers in relation to the financially secure insurance carriers. We noted that this discrepancy in bargaining power could result in the claimant being coerced to accept a lower settlement amount than that provided for by an insurance contract.

No such disparity of bargaining power exists here. In fact, here, a claimant who accepts a settlement offer for an amount lower than the amount for which the carrier is liable jeopardizes the carrier's interest and it is the carrier who is disadvantaged because it remains liable for the deficiency. The majority contends that only the interests of carriers that are unaware of a third-party suit are at jeopardy. *See* maj. op. at 859–860. I do not find this distinction meritorious. Even the interests of carriers that are aware of third-party suits are jeopardized when the insured settles a third-party claim without first obtaining the carrier's consent. Pursuant to section 8–52–108(1), the third-party cause of action is assigned to the carrier that has already paid workers' compensation benefits. Regardless of whether the carrier is notified of the initiation and prospects of recovery under the third-party suit, the carrier is "subrogated to the rights of the injured employee" under section 8–52–108(1). Therefore, the carrier is benefitted by having the right to recover the settlement amount received by the employee, limited to the amount of the carrier's total liability for compensation to the employee under the Act. However, once an injured employee settles a third-party claim for less than the amount of the workers' compensation benefits due the employee, the carrier is barred from suing the third party to recover any deficiency and the carrier's interests are, therefore, jeopardized irrespective of whether the carrier received notification of the suit. *See* § 8–52–108(1), 3B C.R.S. (1986) (payment by a carrier of compensation under the Act operates as an assignment of the cause of action against the third-party tortfeasor to the carrier).

In *In re Death of Peterkin*, 729 P.2d 977, 981 (Colo.1986), we explained the "harsh rule of forfeiture." We stated that this rule is supported by sound policy considerations protective of insurance carriers:

> Just as the employee needs to be protected from dispositions of third-party rights from compensation carriers motivated solely by carrier self interest, so the carrier sometimes needs to be protected from improvident dispositions of third party rights by employees.
>
> . . . .
>
> The commonest expression of this concern is the familiar rule, sometimes explicitly laid down in statute, that if an employee settles a third party claim without the employer's consent, the employee forfeits any right to future compensation.

*Id.* (citing 2A A. Larson, *Larson's Workmen's Compensation Law* § 74.17 at 14–372 to –373 (1982)); *See also Kusiak v. Commercial Union Assur. Co.*, 49 A.D.2d 122, 373 N.Y.S.2d 714, 716 (N.Y.App.Div. 1975) (purpose of statute was "to prevent settlements which might prejudice the rights of the carrier"); *Maryland Cas. Co. v. Simmons*, 193 So.2d 446, 448 (Fla.Dist. Ct.App.1966) (prohibition on settlement without carrier's consent is designed to protect carrier to extent of benefits conferred).

Eckhardt argues that, as in *Wetzel* and *Savio*, we should liberally interpret section 8–52–108(2) so as to give effect to the beneficent purpose behind the Act. If we fail to impose a duty of reasonableness in determining whether to consent, he argues, then insurance carriers would be free to unreasonably refuse settlement offers. This argument is also without merit.

An insurance carrier's subrogation interest secures contribution and indemnity to the carrier. *See Kirkham v. Hickerson Bros. Truck Co.*, 29 Colo.App. 303, 308, 485 P.2d 513, 516 (1971). It is in the best interests of the carrier, therefore, to fairly and reasonably evaluate settlement offers before deciding whether to grant or withhold consent.[3] As a result, I find it unnecessary to judicially impose a new rule in this arena when the interests of the insured are protected by the very nature of the subrogation interest.

Recently, the legislature has declared that the Act should be "interpreted so as to ensure the quick and efficient delivery of ... benefits to injured workers at a reasonable cost to employers, without the necessity of any litigation...." § 8–40–102, 3B C.R.S. (1991 Supp.). While this legislative declaration was enacted subsequent to the orders of the administrative law judge and

the Panel in this case, we can consider subsequent legislation to determine ongoing legislative intent. *See Swerdfeger v. Swerdfeger*, 793 P.2d 618, 620 (Colo.App. 1990). This legislative purpose is further served by allowing carriers to make the decision whether to consent to settlement without subjecting them to additional litigation over the reasonableness of their actions. By not imposing such a duty and inducing carriers to consent to avoid such litigation, the integrity of insurance funds in order to meet future requirements is promoted.

## II

Because I would not impose a new duty on workers' compensation insurance carriers to act other than in their own perceived best interests in determining whether to consent to settlement, I would also not apply the failure to intervene test proposed by the majority for determining whether a refusal to consent was unreasonable. *See* maj. op. at 861. I agree with Justice Erickson's conclusion that the imposition of such a requirement is not supported by case law, statutory authority or the policy underlying the Act.

Justice ERICKSON dissenting.

I respectfully dissent. The majority reverses the court of appeals for affirming the Administrative Law Judge and the Industrial Claims Appeals Office decision to terminate future workers' compensation benefits to Richard K. Eckhardt. The reversal is on the grounds that the court of appeals held that the Workers' Compensation Act (Act) "does not require an employer and/or its insurance carrier to act reasonably in withholding consent to a compromise or settlement of a suit by an in-

---

3. I note, however, that the duty outlined in *Wetzel* and *Savio* may be implicated where a carrier first encourages or participates in the settlement negotiations between the insured and the third party. The carrier's initial participation in the settlement negotiations may spur the insured to accept a settlement offer because such involvement indicates that the carrier will consent to settlement. Breach of the duty of good faith and fair dealing set forth in *Wetzel*

subjects the carrier to tort liability. *See Scott Wetzel Services, Inc. v. Johnson*, 821 P.2d 804 (Colo.1991). Subsequent bad faith or unreasonable refusal to consent to settlement implicates a lack of good faith by the carrier in promoting settlement originally, with the potential for a claim against the carrier for breach of the *Wetzel* duties. In this case, however, no such encouragement or participation transpired.

jured employee against the alleged third-party tortfeasor." Maj. op. at 857.

The court of appeals stated,

Colorado ... has no statutory provision which imposes on the insurer the obligation to be reasonable when considering whether to grant its approval to the settlement of a third-party action. *See Kirkham v. Hickerson Bros. Truck Co.*, 29 Colo.App. 303, 485 P.2d 513 (1971). And, only the General Assembly can change the provisions of the Workers' Compensation Act....

... Here, the settlement proceeds were insufficient to discharge the insurer because both the gross and net amount of such proceeds were less than the amount of its subrogation interest.

*Eckhardt v. Village Inn*, No. 90CA0060, slip op. at 2 (Colo.App. Oct. 11, 1990). The majority creates the rule of reasonable refusal in workers' compensation law and imposes a duty on a workers' compensation insurance carrier to intervene to protect subrogation rights afforded by section 8–52–108, 3B C.R.S. (1986). The imposition by the majority of a requirement on the insurance carrier to intervene in the third-party action when the settlement offer is not approved as being inimical to the carrier is not supported by any case law or authority that has come to my attention. The majority remands for a hearing that is to be conducted pursuant to the standards established by the majority. Maj. op. at 862. None of the standards limiting the rule of forfeiture recognized in *In re Death of Peterkin*, 729 P.2d 977 (Colo.1986), was known prior to the announcement of this opinion. The facts set out by the Administrative Law Judge supporting forfeiture of further workers' compensation benefits are the identical undisputed facts that resulted in an affirmance by the Industrial Claims Appeals Office and the Colorado Court of Appeals.

The Colorado Workers' Compensation Act provides an employee with compensation for injuries suffered while working for his employer within the course and scope of his employment. *See generally*, §§ 8–40–101 to 8–54–127, 3B C.R.S. (1986) (current version at §§ 8–40–101 to 8–47–209, 3B C.R.S. (1991 Supp.)). The employer contracts for insurance to secure payment of workers' compensation to an employee who has been injured and qualifies for workers' compensation. § 8–44–102, 3B C.R.S. (1986). Here, both the employer and the insurance carrier admitted liability and workers' compensation and benefits were paid that were in excess of $12,252.18 at the time the payments were terminated.

When an employee is injured by the negligence or wrongful conduct of a third party, he may elect to proceed solely against the third party or he may accept workers' compensation under the Act with payment operating as an assignment of his cause of action against the third party and with statutory subrogation rights granted to the compensation carrier. § 8–52–108(1), 3B C.R.S. (1986).

When an employee institutes a civil action against the third party and the case is settled for an amount that is less than that paid by the compensation carrier, the employee forfeits future workers' compensation if the insurance carrier has not given its written approval to the settlement. § 8–52–108(2), 3B C.R.S. (1986); *In re Death of Peterkin*, 729 P.2d 977 (Colo. 1986); 2A Arthur Larson, *Larson's Workmen's Compensation Law* § 74.17 at 14–372 to –373 (1982).

Here, the petitioner, Richard H. Eckhardt, sought to recover damages for injuries he incurred in a motor vehicle collision while he was working within the course and scope of his employment for the respondent, Village Inn. Village Inn was insured by Great American Insurance Company (Great American). Eckhardt filed a civil action in the United States District Court for the Western District of Missouri, alleging that his injuries were caused by third parties in a motor vehicle collision in Missouri. Prior to trial, with the advice of his lawyer, he settled the case for $12,500 without obtaining the approval of Great American.

Prior to the settlement in the federal court, Eckhardt had been paid $11,622.18 by Great American. Eckhardt's counsel

offered to settle Great American's assigned and subrogated interest for $2,000 or twenty-five percent of the $12,500 settlement. Great American agreed to accept $7,000 in settlement of its $11,622.18 subrogation interest, provided that Eckhardt waived all claims to future compensation from the carrier. Eckhardt refused and the settlement was made without the carrier's approval or consent. A check was issued by the third-party tortfeasors that was payable to Eckhardt, his lawyers, and Great American. Great American refused to endorse the check unless it was paid for its $11,622.18 subrogation right. The federal district judge, pursuant to Missouri law, ordered that the payment be made into the registry of the court. The settlement proceeds were then divided by the federal judge in the following manner:

| | |
|---|---|
| Eckhardt | $ 450.17 |
| Eckhardt's attorneys fees and expenses | 6,089.63 |
| Great American's subrogation interest | 5,960.20 |

Based upon Eckhardt's settlement with the third-party tortfeasor, and without the approval of Great American, for an amount less than the workers' compensation lien,

Great American petitioned to suspend Eckhardt's workers' compensation benefits. *See* § 8–52–108(1), 3B C.R.S. (1986) (recodified at § 8–41–203(1), 3B C.R.S. (1991 Supp.)).[1] The statutory sections in issue are intended to protect the insurance carrier who has advanced funds to pay for injuries incurred by an employee entitled to compensation under the Act as a result of the negligence or wrongful act of third parties. *Continental Casualty Co. v. Gate City Steel,* 650 P.2d 1336 (Colo.App. 1982); *see also Riss & Co., Inc. v. Anderson,* 108 Colo. 78, 114 P.2d 278 (1941). It is axiomatic that, "An injured employee who recovers damages from a third-party tortfeasor must reimburse his employer's [workers'] compensation carrier for benefits paid to him, but any damages recovered in excess of the compensation paid by the carrier belong to the employee." *State Compensation Ins. Fund v. Commercial Union Ins. Co.,* 631 P.2d 1168, 1169 (Colo.App.1981) (citing *Kirkham v. Hickerson Bros. Truck Co.,* 29 Colo.App. 303, 485 P.2d 513 (1971)).

In *In re Death of Peterkin,* 729 P.2d 977, 981 (Colo.1986), we held that under section

---

1. Section 8–52–108(1), 3B C.R.S. (1986), provides:

If any employee entitled to compensation under articles 40 to 54 of this title is injured or killed by the negligence or wrong of another not in the same employ, such injured employee or, in case of death, his dependents, before filing any claim under this article, shall elect in writing whether to take compensation under said articles or to pursue his remedy against the other person. Such election shall be evidenced in such manner as the director may by rule or regulation prescribe. If such injured employee or, in case of death, his dependents elect to take compensation under said articles, the payment of compensation shall operate as and be an assignment of the cause of action against such other person to the division of the state compensation insurance fund, medical disaster insurance fund, major medical insurance fund, or subsequent injury fund, if compensation is payable from said funds, and otherwise to the person, association, corporation, or insurance carrier liable for the payment of such compensation. Said insurance carrier shall not be entitled to recover any sum in excess of the amount of compensation for which said carrier is liable under said articles to the injured employee,

but to that extent said carrier shall be subrogated to the rights of the injured employee against said third party causing the injury. If the injured employee elects to proceed against such other person, the state compensation insurance fund, medical disaster insurance fund, major medical insurance fund, subsequent injury fund, person, association, corporation, or insurance carrier, as the case may be, shall contribute only the deficiency, if any, between the amount of the recovery against such other person actually collected and the compensation provided by said articles in such case. The right of subrogation provided by this section shall apply to and include all compensation and all medical, hospital, dental, funeral, and other benefits and expenses to which the employee or his dependents are entitled under the provisions of said articles, including articles 65 and 66 of this title, or for which his employer or insurance carrier is liable or has assumed liability. Nothing in this section shall be construed as limiting in any way the right of the injured employee to elect to take compensation under articles 40 to 54 of this title and also proceed against the third party causing the injury to recover any damages in excess of the subrogation rights described in this section.

8–52–108(2),[2] a claimant forfeited his right to receive future compensation benefits by settling a third-party claim for an amount less than the insurance carrier's subrogated interest without the approval of the carrier. The termination of benefits by the Administrative Law Judge, who was affirmed by the Industrial Claims Appeals Office and the court of appeals, was supported by *Peterkin* and should be affirmed by this court. The majority has constructed a new rule which provides that an injured employee who claims that a compensation carrier unreasonably withheld consent to a third-party must show:

> First, the employee gave adequate notice of the suit and its changing fortunes, and notice of the proposed settlement to the carrier. Second, the proposed settlement was reasonable under all the circumstances. Third, the employee or carrier unreasonably failed to intervene in the underlying suit. If notice of the suit or the proposed settlement was inadequate, or if the settlement was unreasonable, or if the carrier timely intervened in the suit [but intervention was unavailing], then the petition to suspend benefits should be granted under the rule of forfeiture.

Maj. op. at 862–863.

First, notice to the compensation carrier of the employee's civil action against a third party is essential if the carrier is to intervene and evaluate the employee's claim. Second, the reasonableness of the settlement is directed not only at the amount offered to settle the third-party claim, but also the amount proposed to settle the carrier's assigned and subrogated rights. As to the third requirement— intervention by the employer or the carrier in the employee's third-party action—I take exception. The determination of the reasonableness of the settlement and the carrier's unreasonable failure to intervene are

additional factual issues that must be resolved in every case that is now subject to the rule of reasonable refusal. Nothing in the Colorado statutes requires that a carrier intervene to protect its subrogation right. Economic considerations may dictate that a carrier consider the possibility of recovering payments made to the employee on the merits of a third-party claim. However, a carrier should not be penalized for failure to intervene by the forfeiture of assigned or subrogated rights when the third-party claim is of doubtful merit when considered on the basis of either liability or damages. The majority's equation for balancing the rights of the employee and the insurance carrier usurps the function of the General Assembly and constitutes pure judicial legislation.

When enacting a statute, the General Assembly is presumed to have intended a just and reasonable result. § 2–4–201(1)(b), 1B C.R.S. (1980); *People v. Johnson,* 797 P.2d 1296 (Colo.1990). We recognized that principle when we stated that in order to avoid harsh forfeitures of future workers' compensation benefits "protections may be required where the insurer unreasonably refuses to consent to the employee's settlement." *Peterkin,* 729 P.2d at 981 n. 2. We recently noted:

> The duty of the insurer to act in good faith when dealing with its insured is characterized in many jurisdictions as a duty implied by law as a covenant of the insurance contract. In *Gruenberg v. Aetna Ins. Co.,* 9 Cal.3d 566, 575, 108 Cal.Rptr. 480, 486, 510 P.2d 1032, 1038 (1973), the California Supreme Court stated,
>
> > in every insurance contract there is an implied covenant of good faith and fair dealing. The duty to so act is [immanent] in the contract whether the compa-

---

**2.** Section 8–52–108(2) 3B C.R.S. (1986), provides:

> (2) Such a cause of action assigned to the division of the state compensation insurance fund may be prosecuted or compromised by it. A compromise of any such cause of action by the employee or his dependents at an amount less than the compensation provided for by articles 40 to 54 of this title shall be

made only with the written approval of the manager of the state compensation insurance fund, if the deficiency of compensation would be payable from the state compensation insurance fund, and otherwise with the written approval of the person, association, corporation, or insurance carrier liable to pay the same.

ny is attending to the claims of third persons against the insured or the claims of the insured itself. Accordingly, when the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort.

*Scott Wetzel Services, Inc. v. Johnson*, 821 P.2d 804 (Colo.1991) (quoting *Farmers Group, Inc. v. Trimble*, 691 P.2d 1138, 1141 (Colo.1984)). Nothing in the record before us supports Eckhardt's claim that Great American acted unreasonably or in bad faith in refusing to consent to the settlement.

I also do not agree with the majority's application or expansion of the *Peterkin* bad faith or unreasonableness exception. The party claiming application of the bad faith exception should have the burden to show that the carrier's conduct in withholding consent or approval was unreasonable. *See Wetzel*, 821 P.2d at 810 ("in order to establish breach of the insurance carrier's duty of good faith to one asserting a claim for workers' compensation, *the claimant* must show that the insurer's conduct was unreasonable and that the insurer knew it was unreasonable or acted in reckless disregard of whether it was unreasonable" (emphasis added)) (citing *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1276 (Colo.1985)).

In *County Workers Compensation Pool v. Davis*, 817 P.2d 521, 526 n. 5 (Colo.1991), we held that an "insurer has the right to intervene and participate in the employee's tort action against a third party or may elect to file a separate claim against the tortfeasor." Depending on the expense involved in intervening and the amount of the subrogation interest at stake in a particular case, a carrier could reasonably decide that it is not in its best interests either to intervene or to consent to a proposed settlement.

Great American's subrogation rights are specifically defined by statute. § 8–52–108, 3B C.R.S. (1986). The General Assembly, in granting a subrogation right to a compensation carrier, such as Great American, did not impose the procedures and requirements set out in the majority opin-ion. Great American paid Eckhardt $11,-622.18 as compensation for his injuries under the Act and obtained subrogation rights that cannot be eliminated by judicial fiat. The Act does not force a compensation carrier to accept less than its subrogation interest.

The fact that the proceeds of the settlement were divided by the federal district judge in Missouri does not establish that the carrier's refusal to settle was in bad faith or unreasonable. Arkansas, Nebraska, and New York, by statute, allow an employee to seek court approval of a settlement when the carrier refuses to consent. *See* 2A Arthur Larson, *Larson's Workmen's Compensation Law* § 74.17(d) (1991 Supp.). The Colorado statutes require approval by the employer or compensation carrier and do not permit a court's division of the proceeds to serve as an approval. Court approval, when permitted by statute, in some instances might be viewed as establishing that the carrier's refusal to consent was unreasonable or in bad faith. *Id.* The division here, however, did not constitute court approval of the settlement. The settlement had already been entered into and the court merely ordered the distribution of the proceeds.

In my opinion, neither Great American's failure to approve the settlement or to intervene in Eckhardt's action against the third party, nor the federal court's division of the settlement proceeds establishes that Great American acted in bad faith. I would affirm the judgment of the court of appeals.

VOLLACK, J., joins in this dissent.