2016 COA 66

Arnold **ARCHULETTA**, Petitioner,

**v.**

**INDUSTRIAL CLAIM APPEALS OF-FICE** of the State of Colorado; Concrete Frame Associates, Inc.; and American Zurich, Respondents.

**Court of Appeals No. 15CA1347**

Colorado Court of Appeals,
Div. I.

Prior Opinion Announced March 3, 2016.

Announced April 21, 2016

McDivitt Law Firm, Nicole Smith, Colorado Springs, Colorado; The Elliott Law Offices, P.C., Mark D. Elliot, Alonit Katzman, Arvada, Colorado, for Petitioner

No Appearance for Respondent Industrial Claim Appeals Office

Thomas Pollart & Miller LLC, Brad J. Miller, Greenwood Village, Colorado, for Respondents Concrete Frame Associates, Inc., and American Zurich

Opinion by JUDGE FOX

¶ 1 In this workers' compensation action, claimant, Arnold Archuletta, seeks review of a final order of the Industrial Claim Appeals Office (Panel), which set aside the portion of a decision by an administrative law judge (ALJ) granting him temporary total disability (TTD) benefits. The Panel determined that claimant was not entitled to TTD benefits because his "attending physician" had released him to full duty work. We set aside the Panel's decision and remand the case with directions to reinstate the ALJ's order.

## I. Background

¶ 2 Claimant worked as a carpenter for employer, Concrete Frame Associates, Inc. On a very windy day in February 2014, claimant's supervisor instructed him to secure materials, such as plywood, that could be blown by the wind. Claimant picked up a piece of plywood to secure it, but the wind immediately caught the plywood, causing claimant to "slid[e] into a steel beam." His knee hit "the edge of the beam and [he] pretty much kind of like blacked out for a few minutes." He sustained lacerations to his knee that required suturing at the emergency room.

¶ 3 The next day, claimant visited Premier Urgent Care for follow-up treatment. The physician imposed temporary restrictions and released him to modified duty. But, by March 5, the attending physician released him to full duty work with no restrictions. The physician reiterated this opinion in subsequent reports. On May 21, the attending physician determined claimant had reached maximum medical improvement (MMI), with no impairment or restrictions, and again released him to full duty. Based on the attending physician's MMI report, employer filed a final admission of liability (FAL).

¶ 4 Despite being released to full duty, claimant maintained that he was unable to work anything but light duty because of his injury, which his foreman permitted him to do. He was laid off one week after reaching MMI because, he said, he was "hurt on the job," could "no longer perform [his] duties," and "was on light duty."

¶ 5. Claimant therefore requested a division-sponsored independent medical examination (DIME) to challenge the attending physician's MMI finding. The physician who performed the DIME concluded that claimant was not at MMI. In addition, the DIME physician noted: "In consideration of his long professional career without difficulty, the inciting event on 02/24/2014 resulted in a dramatic change to his functional capacity for gainful employment and deserves further management."

¶ 6 After conducting a hearing, the ALJ awarded claimant TTD benefits. The ALJ found that claimant was unable "to perform his full job duties as a result of his industrial injury." The ALJ also noted that claimant understood "that he was laid off because his employer didn't have any light duty and he was unable to perform full duty work." The ALJ concluded that claimant established that "his wage loss is directly attributable to his industrial injury," entitling him to TTD benefits commencing on the day he was laid off, May 28, 2014.

¶ 7 On review, though, the Panel held that the ALJ had misapplied the governing law. Citing *Burns v. Robinson Dairy, Inc.*, 911 P.2d 661 (Colo.App.1995), the Panel ex-

plained that under section 8–42–105(3)(c), C.R.S.2015, once a claimant has been released to full duty work by his attending physician, as claimant had been here, TTD benefits must cease and the ALJ was not free to award them to claimant. Claimant now appeals.

## II. Application of Section 8–42–105(3)(c)

¶ 8 Claimant first contends that the Panel misconstrued the statute. He argues that section 8–42–105(3)(c) cannot apply to him because that statute applies to the termination of benefits. In his situation, however, no benefits had started when the attending physician released him to work. Therefore, he reasons, the Panel should have analyzed his case under sections 8–42–103, C.R.S.2015, and 8–42–105(1), which apply to the commencement of benefits. Because those sections do not expressly bar the commencement of TTD benefits if an attending physician has released claimant to full duty, claimant contends his TTD benefits should not have been foreclosed by the Panel. We agree.

### A. Statutes at Issue

¶ 9 Section 8–42–103 provides for disability benefits. It states:

(1) If the injury or occupational disease causes disability, a disability indemnity shall be payable as wages pursuant to section 8–42–105(2)(a) subject to the following limitations:

. . . .

(b) If the period of disability lasts longer than two weeks from the day the injured employee leaves work as the result of the injury, disability indemnity shall be recoverable from the day the injured employee leaves work.

§ 8–42–103. Under the Workers' Compensation Act (Act), then, "a claimant is entitled to an award of TTD benefits if: (1) the injury or occupational disease causes disability; (2) the injured employee leaves work as a result of the injury; and (3) the temporary disability is total and lasts more than three regular working days." *Lymburn v. Symbios Logic,* 952 P.2d 831, 833 (Colo.App.1997). But, the Act also specifies that disability benefits

"shall cease upon the occurrence of any of the events enumerated in subsection (3) of this section." § 8–42–105(1). That subsection mandates the conditions and occurrences which terminate TTD benefits:

(3) Temporary total disability benefits shall continue until the first occurrence of any one of the following:

(a) The employee reaches maximum medical improvement;

(b) The employee returns to regular or modified employment;

(c) The attending physician gives the employee a written release to return to regular employment; or

(d)(I) The attending physician gives the employee a written release to return to modified employment, such employment is offered to the employee in writing, and the employee fails to begin such employment.

§ 8–42–105.

### B. Law Governing Statutory Interpretation

¶ 10 We turn first to the rules governing statutory construction to guide us here. If its language is clear, "we interpret the statute according to its plain and ordinary meaning." *Davison v. Indus. Claim Appeals Office,* 84 P.3d 1023, 1029 (Colo.2004). In addition, "when examining a statute's language, we give effect to every word and render none superfluous because we 'do not presume that the legislature used language idly and with no intent that meaning should be given to its language.'" *Lombard v. Colo. Outdoor Educ. Ctr., Inc.,* 187 P.3d 565, 571 (Colo.2008) (quoting *Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.,* 109 P.3d 585, 597 (Colo. 2005)).

¶ 11 We review statutory construction de novo. *Ray v. Indus. Claim Appeals Office,* 124 P.3d 891, 893 (Colo.App.2005), *aff'd,* 145 P.3d 661 (Colo.2006). "[A]n administrative agency's interpretation of its own regulations is generally entitled to great weight and should not be disturbed on review unless plainly erroneous or inconsistent with" the statutory or regulatory language. *Jimi-*

*nez v. Indus. Claim Appeals Office,* 51 P.3d 1090, 1093 (Colo.App.2002); *see also Support, Inc. v. Indus. Claim Appeals Office,* 968 P.2d 174, 175 (Colo.App.1998).[1]

### C. Section 8–42–105(3)(c) Does Not Apply

¶ 12 Section 8–42–105(3)(c) provides that a claimant's TTD benefits must end if the claimant's "attending physician" releases him or her to full duty work. "The effect of this mandate is to limit the scope and frequency of disputes concerning the duration of TTD benefits by treating the opinion of the attending physician as conclusive with respect to a claimant's ability to perform regular employment." *Burns,* 911 P.2d at 662. It is a question of fact *whether* a claimant has been released to return to work by the attending physician. *Imperial Headware, Inc. v. Indus. Claim Appeals Office,* 15 P.3d 295, 296 (Colo.App.2000). But, once it is established that the attending physician has released a claimant to full duty, "the opinion of the attending physician carries conclusive effect with respect to a claimant's ability to perform regular employment." *Bestway Concrete v. Indus. Claim Appeals Office,* 984 P.2d 680, 685 (Colo.App.1999).

¶ 13 The legislative mandate also limits an ALJ's discretion when reviewing a release to work. "[U]nless the record contains conflicting opinions from attending physicians regarding a claimant's release to work, the ALJ is not at liberty to disregard the attending physician's opinion that a claimant is released to return to employment." *Burns,* 911 P.2d at 662. Indeed, in light of an attending physician's opinion releasing a claimant to full duty, "any evidence concerning claimant's self-evaluation of his ability to perform his job [is] irrelevant and should be disregarded by the ALJ." *Lymburn,* 952 P.2d at 833.

¶ 14 The Panel, relying upon *Burns* and *Lymburn,* held that the ALJ improperly disregarded the attending physician's note releasing claimant to full duty. It ruled that the termination provision applied here, and

that, because the ALJ had found claimant was released to work without restrictions, the ALJ was obligated to discontinue TTD benefits.

¶ 15 Claimant contends that the Panel's reading misapplies the statute. He argues that section 8–42–105(3)(c) cannot apply because his benefits were not awarded until *after* the attending physician's release. Essentially, he asks, how can benefits be terminated when they have not yet commenced?

¶ 16 Under the plain meaning of section 8–42–105(3), they cannot. Section 8–42–105(3) specifies that TTD "benefits *shall continue*" until one of the enumerated events occur. (Emphasis added.) "Continue" is defined as follows:

> 1.a. to be steadfast or constant in a course or activity; keep up or maintain [especially] without interruption a particular condition, course, or series of actions.
>
> b. to keep going; maintain a course, direction, or progress
>
> . . . .
>
> 3. to remain in a place or condition.

*Webster's Third New International Dictionary* 493 (2002). None of these definitions suggests that an action which has not yet begun can "continue." All apply to an action that has already started and will go on uninterrupted. If the statutory language is "clear and unambiguous," we must apply the statute "as written unless such an application produces an absurd result." *Lymburn,* 952 P.2d at 833. Moreover, we may not read nonexistent provisions into the Act. *See Eckhardt v. Vill. Inn (Vicorp),* 826 P.2d 855, 864 (Colo.1992). In our view, under the plain meaning of the statute, claimant's benefits could not "continue," and therefore could not cease, because claimant had not yet received any TTD benefits.

¶ 17 Contrary to the Panel's conclusion, neither *Burns* nor *Lymburn* mandates a different result. In *Burns,* the claimant had been receiving TTD benefits for several months before the "attending physician released [him] to return to work with full

---

1. Although we give deference to the Panel's reasonable interpretations of the statute it administers, *Sanco Indus. v. Stefanski,* 147 P.3d 5, 8 (Colo.2006); *Dillard v. Indus. Claim Appeals Office,* 121 P.3d 301, 304 (Colo.App.2005), *aff'd,* 134 P.3d 407 (Colo.2006), we are not bound by the Panel's interpretation or its earlier decisions. *Olivas–Soto v. Indus. Claim Appeals Office,* 143 P.3d 1178, 1180 (Colo.App.2006).

duties." 911 P.2d at 662. The claimant's benefits therefore had commenced and continued until the physician issued a work release. *Id. Lymburn*, on the other hand, reinstated an ALJ's award of TTD benefits to the claimant and set aside the Panel's ruling that the claimant had to produce a medical report restricting her from her regular employment in order to collect TTD benefits. 952 P.2d at 833–34. The *Lymburn* division held that the statute imposed no such burden on a claimant and rejected the Panel's conclusion reading additional requirements into the statute. *Id.*

¶18 Similarly, here, section 8–42–105(3) provides that benefits "shall continue" until one of the enumerated terminating events occurs. We therefore conclude that, under the plain meaning of the statute, a medical return to work order that predates the commencement of TTD benefits cannot trigger the benefits cessation provisions of section 8–42–105(3) because there are no benefits in place to "continue until" one of the listed circumstances occurs. *See Lymburn*, 952 P.2d at 833.

### III. Claimant's Remaining Contentions

¶19 Having decided that section 8–42–105(3) does not apply to claimant's situation, we need not address claimant's contentions that: (1) an internal conflict existed in the attending physician's reports or (2) the statute's application violates his constitutional guarantees of due process and separation of powers.

### IV. Conclusion

¶20 Accordingly, we hold that section 8–42–105(3)(c) does not apply to claimant's case because the statute can only terminate benefits that have already commenced and consequently can only be applied prospectively.

¶21 The Panel's order is set aside and the case is remanded with directions to reinstate the ALJ's order.

JUDGE TAUBMAN and JUDGE MILLER concur.